H. J. MULLINS & CO. v. S. M. THOMPSON, ADM'R.

51    7
90   330

1. PRACTICE—EVIDENCE.—This court will not consider the admissibility of testimony, to which the record shows no objection was made in the court below.
2. CONSTRUCTION OF LIFE INSURANCE POLICY.—A life insurance policy, payable to the heirs of the assured, does not form part of his estate for the payment of his debts.
3. HEIRS.—The word "heirs" in an insurance policy is sufficiently explicit to enable parties proving heirship to take the proceeds of such policy as against the creditors.

4. HEIRS OR ASSIGNS.—A policy payable to the heirs or assigns of the assured was assignable by the assured, and not being assigned, the heirs were entitled to it on the death of the assured.

APPEAL from Houston.    Tried below before the Hon. R. S. Walker.

H. J. Mullins & Co. instituted proceedings November 10, 1874, by motion, against S. M. Thompson, administrator of the estate of W. P. Thompson, in the District Court of Houston county, on probate side, to compel the administrator to inventory as part of the estate the proceeds of a policy of insurance for $2,500, issued by the Phœnix Life Insurance Company. The defendant resisted the motion, claiming that the policy was payable to the heirs of said deceased, and formed no part of the estate; that the deceased died unmarried, leaving defendant and his wife, who were the parents of deceased, as heirs; that he also left brothers and sisters; that deceased was indebted to his father about $3,000, and that the policy was procured to secure his parents against loss, &c.

On the trial it was admitted that the policy was payable to the heirs or assigns of the insured; the heirship of the parents; that they were poor and had five other children, mostly girls; that the deceased was indebted to his father, and spoke of insuring his own life for the benefit of his parents, &c. No objection appears to have been taken to the parol testimony as to the intention of the deceased in taking out the policy on his life.

The court refused the motion.    Mullins & Co. appealed.

*Nunn & Williams,* for appellants.—The decision of this case depends on a construction of the terms of the policy referred to in the record, which, as will be seen, was made payable to the " heirs or assigns " of W. P. Thompson, the insured.

We contend that the money collected on the policy so worded became, upon the death of insured, (he not having assigned it,) subject to the claims of his creditors; and that his heirs took, if at all, subject to such claims.

As is contended by appellee's counsel, much regard is had to the intentions of the contracting parties in construing policies of insurance as well as other contracts. But the intentions are looked to only to assist in ascertaining the meaning of the contract as made; and mere declarations of one of the contracting parties, made to third persons, and not entering into the negotiations between him and the other party to the contract, (the insurance company,) either before or after the issuance of the policy, furnish no safe evidence as to what the contract actually was between him and the company. (Wason *v.* Colburn, 99 Mass., 342.) Therefore, we submit, the testimony as to the intention expressed by deceased, as shown in the record, other than in the terms of the policy, was inadmissible, and ought not to be considered by the court in construing the policy.

Then what is the meaning of the language employed, and what is its effect in determining the proper application of the money?

We submit that the term "heirs" is not a designation of certain persons who are to be the beneficiaries of the policy, to the exclusion of the insured himself, and of his estate after his death. When used in connection with the word "assigns," the only construction we can put upon the language which will at all harmonize the two terms, is that the interest in and control over the policy should remain in him (the insured) during his life, with the further stipulation that it should go to those legally entitled to inherit from him at his death, not as the absolute beneficiaries—the *cestuis que trust*—of the contractor, but as his representatives. Had he intended to provide for his father and mother and create a trust in their favor, why would he reserve to himself the absolute right of disposal? Suppose they had died before him: to whose heirs would the money have gone,—his or theirs? Most assuredly to his. The term heirs, taken by itself, is entirely too general and uncertain to warrant the supposition that by this policy he intended to invest the absolute

beneficial interest in his father and mother; for he could not know that they would be his heirs when the right should accrue under it. He evidently intended to take out the policy in such shape that he could use, control, and receive whatever benefit from it he desired.

The word "heirs" simply referred to those persons whom the laws of descent would ascertain as his representatives.

This application of the term is by no means unprecedented. In the case of Soye *v.* McCallister, 18 Tex., 80, a conveyance was made to certain parties by name, the deed at the same time describing them as heirs of a deceased person.

The court, in construing the deed, held that they took in their representative capacity as heirs at law of the deceased, and not in their own right, as by purchase; and that the land was subject in their hands to the debts of their ancestor. So in this case the insured takes out a policy showing by the terms used that he intends to reserve to himself the benefit of and control over it during his life. At his death he still had an interest in it, for he still had the right to assign it in any way he chose. How did that interest vest in heirs? If at all, surely by descent; and if by descent, subject to the claims of creditors.

If a policy by its terms is assignable, a creditor may, by a proper proceeding, reach and apply the interest of insured to his debt. (Bliss on Life Ins., p. 590.) This shows that the right to assign retains to the insured the true interest in the policy. The appellee's counsel rely principally on the case of Loos *v.* The John Hancock Mutual Life Insurance Co., 41 Mo., 539.

In that case the policy, on the death of the insured before the expiration of fifteen years, was payable to his "heirs or representatives." The court held that the only daughter and heir could maintain an action on the policy against the insurance company, the insured having died before the expiration of fifteen years.

In the case of Wason *v.* Colburn, 99 Mass., 342, precisely

the same question arose on a policy issued by the same company, couched in the same language.

The case cited was referred to and discussed in the argument and considered by the court. It was then decided that the heirs did not take as beneficiaries or *cestuis que trust* under the policy, but that the money went to the estate of insured; and the Missouri decision was held to be correct. (Wason *v.* Colburn, 99 Mass., 342.)

Mr. Bliss, in his work on Life Insurance, referring to these two cases, gives his sanction to the Massachusetts decision as the more correct. (Bliss on Life Ins., p. 500.)

It is also in full accord with the decisions of our Supreme Court as to the legal significance of the word "representatives." The other authorities referred to by appellee are not applicable, as will be found on examination.

Upon the point here discussed, we refer to People *v.* Phelps, 78 Ill., 147; Bliss on Life Ins., p. 469, *et seq.*

*Moore & Spence,* for appellee, cited Trenton Mutual Life and Fire Ins. Co. *v.* Johnson, 4 Zab., 576; Campbell *v.* New England Life Ins. Co., 98 Mass., 381; Hoyt *v.* New York Life Ins. Co., 1 Big. Life Ins. Rep., 497; Bliss on Life Ins., pp. 20, 28, 32, 37, 518, 520, 534, 570; American Life and Health Ins. Co. *v.* Robertshaw, 1 Big. Life Ins. Rep., 665; Clinton *v.* Hope Ins. Co., 45 N. Y., 454; Loos *v.* John Hancock Ins. Co., 41 Mo., 538; Swan *v.* Snow, 11 Allen, 224; Gould *v.* Emerson, 99 Mass., 154; Kerman *v.* Howard, 23 Wis., 108; Knickerbocker Life Ins. Co. *v.* Weitz, 99 Mass., 157.

GOULD, ASSOCIATE JUSTICE.—Appellants, creditors of the estate of W. P. Thompson, deceased, sought, by motion, to compel his administrator to inventory as part of the estate a certain life insurance policy. The administrator claimed that the policy constituted no part of the estate, but belonged to himself and wife, the parents and sole heirs of deceased.

On account of the disqualification of the county judge, the motion was transferred to the District Court. That court made its order refusing the motion, and the case comes here by appeal.

The statement of facts recites that "plaintiffs in the motion admitted the terms of the policy, as stated in defendant's answer, as to whom the same was payable." In the original answer, sworn to by defendant, the terms of the policy are thus stated: "That at the death of said W. P. Thompson there was upon his life an insurance policy for $2,500, issued by the Phœnix Life Insurance Company of Hartford, Connecticut; that said policy was drawn in favor of the heirs or assigns of said W. P. Thompson." In a subsequent answer the policy is described as "in favor of the heirs and assigns of said W. P. Thompson"; and in a third answer it is said "that said policy was for the benefit of the heirs and assigns of the said W. P. Thompson, and there was found no assignment of said policy"; and, again, "that the insurance policy declares by its terms that it was for the benefit of his heirs." There is in the record nothing else showing the terms of the policy, or its nature or class. It appears from the statement of facts that W. P. Thompson died unmarried, leaving his father and mother his heirs at law, and that their family consisted of five children, mostly girls. It further appears that he died indebted to his father—who was a poor man—over $3,000, and that before the issuance of the policy, being at that time indebted to his father over $1,600 for cash actually advanced him, he stated his intention to take out a policy payable to his parents to secure to them what he owed them. The policy was found amongst his papers.

No question is presented by bill of exceptions or the assignment of errors as to the admissibility of this parol evidence, and as we think the order of court was correct, without looking to evidence outside of the policy, it is not proposed to inquire whether, as claimed by appellee, such evidence was

admissible on account of the uncertainty as to who would be the heirs of W. P. Thompson when he died.

As it devolved on the plaintiffs to show that the policy belonged to the estate, and devolves on them here to show error in the action of the court below, they should have developed, and must be presumed to have developed, the nature and terms of the policy in so far as these tended to establish their case. If they have failed to show error, the judgment must be affirmed.

Counsel on each side, however, have argued the case as if the policy were payable to the " heirs or assigns " of W. P. Thompson. Assuming such to be its terms, the case presented is, that W. P. Thompson took out an ordinary life policy not payable to himself, but payable to his heirs or assigns. A policy payable to the heirs of the insured is a policy for their benefit, unless there is something on its face to show a different intention. The case of Wason *v.* Colburn, 99 Mass., 342, cited by appellant, was an endowment policy payable at the expiration of the prescribed period to the assured himself, " or, in case of prior decease, to his heirs or representatives." Being an endowment policy, it was said to be primarily intended for the benefit of the assured himself. For this reason, and because the word " representatives " was held to legally indicate " administrators," the policy was treated as part of the estate of the insured. That case differs widely from the present, and neither it nor the opposing case from Missouri cited by appellee can be regarded as controlling the question before us. (Loos *v.* Ins. Co., 41 Mo., 538.)

Insurance policies, other than those classed under the head of endowments, are ordinarily taken out for the benefit of some third person or class of persons, and not as a mere investment for the benefit of the estate of the insured. They may be payable to and for the benefit of a named person or persons, or of a designated class; as, parents, children, next of kin, or heirs. A grown son, not married or contemplat-

ing marriage, and wishing to provide, in case of his death, for his parents and younger brothers and sisters, looking to the contingency of death in the family, might well make the policy payable to his heirs. Looking to the further contingency, that in the course of time his then heirs might all cease to have claims upon him, the parents by death and the brothers and sisters by becoming of an age to provide for themselves, he might reasonably desire, in that event, to be able to assign the policy to some one else. We think that the intention of the insured was, and the true construction of the policy is, that so long as it remained unassigned it was for the benefit of his heirs, but that the power to divert it from the heirs was intended to be reserved.

It is said, that by retaining the power to assign the policy, the insured subjects it, during his life, to be reached by creditors. (2 Bliss on Life Ins., p. 592.) Whether this be so or not in case of an insolvent debtor, whose creditors, during his life or after his death, assert their rights in a proper equitable proceeding, is not a question now before us.

The record as presented fails to show that the true construction of the policy requires that it should constitute a part of the estate, or that the court erred in refusing to compel the administrator to place it on his inventory.

The judgment is affirmed.

AFFIRMED.