UNITED STATES of America,
Appellant,

v.

William H. PRICE, Jr., Appellee.

No. 8116.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 11, 1960.

Decided Feb. 23, 1961.

David L. Rose, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Joseph S. Bambacus, U. S. Atty., Richmond, Va., and Morton Hollander, Atty., Dept. of Justice, Washington, D. C., on brief), for appellant.

Wayne Lustig and Gordon E. Campbell, Norfolk, Va., for appellee.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and ·STANLEY, District Judge.

SOBELOFF, Chief Judge.

█ In making an award under the Federal Tort Claims Act, 28 U.S.C.A. §

1346(b), § 2671 and § 2674, for personal injuries sustained by a civilian employee of the Norfolk Naval Shipyard, the District Court rejected the Government's contention that it should have the benefit of a set-off calculated at the present value of the annuity payable to the plaintiff under the Civil Service Retirement Act, 5 U.S.C.A. § 2251 et seq. For the reasons to be stated, we think the District Court properly denied the set-off.

The plaintiff, William H. Price, Jr., an employee of the United States, lost an arm in a motor vehicle accident caused by the negligence of another government employee. He brought an action against the United States in the District Court for the Eastern District of Virginia, and recovered a judgment for $96,800.[1] In this appeal by the United States, the only issue is whether the plaintiff's benefits under the Civil Service Retirement Act should be taken into consideration in mitigation of the damages payable by the Government under the Tort Claims Act.

The Government's chief reliance is upon this court's decision in United States v. Brooks, 4 Cir., 1949, 176 F.2d 482. There, after the case was remanded by the Supreme Court for consideration of the question of damages, Brooks v. United States, 1949, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200, we held that in a serviceman's action for injuries under the Tort Claims Act, monthly disability payments and allowances for medical expenses, paid to the plaintiff by the Government for the same injury, should mitigate the tort damages. It was further held, however, that payments by the Government under a National Service Life Insurance policy should not be considered in reduction of the award.

■■ Although North Carolina law was applicable in the Brooks case,[2] the court adopted the view that the law of that state was consistent with the general law of damages concerning extraneous compensation received by an injured plaintiff.[3] There may be some variations among different jurisdictions, depending perhaps upon the exact nature of the compensation received,[4] but the broad rule seems to be that where the plaintiff receives from the tortfeasor payments specifically to compensate him for his injury, the tortfeasor need not pay twice for the same damage, and therefore such compensation payments should be taken into account in fixing tort damages. Southwestern Brewery & Ice Co. v. Schmidt, 1912, 226 U.S. 162, 169, 33 S. Ct. 68, 57 L.Ed. 170; Knecht v. United States, 3 Cir., 1957, 242 F.2d 929, 931; 25 C.J.S. Damages § 98. On the other hand, where the injured plaintiff's compensation comes from a "collateral source," it should not be offset against the sum awarded for the tort nor considered in determining that award. Clune v. Ristine, 8 Cir., 1899, 94 F. 745, 749; Hudson v. Lazarus, 1954, 95 U.S. App.D.C. 16, 217 F.2d 344, 346–347, certiorari denied 349 U.S. 968, 75 S.Ct. 906, 99 L.Ed. 1289, rehearing denied 350 U.S. 856, 76 S.Ct. 43, 100 L.Ed. 761; 25 C.J.S. Damages § 99; 15 Am.Jur., Damages, §§ 198–201; and see particularly Judge Collins' review of the cases in Plank v. Summers, 1954, 203 Md. 552, 102 A.2d 262.

■ This rule, that compensation from a collateral source should be disre-

---

1. The plaintiff was awarded $1,800 for expenses incurred as a result of the injury, $45,000 for loss of earnings and $50,000 for pain and suffering.

2. See 176 F.2d at page 483. The statute provides that although the United States shall not be liable for punitive but only compensatory damages, 28 U.S.C.A. § 2674, otherwise its tort liability for the negligence of its servants shall be the same as a private individual according to the law of the place where the tort occurred, 28 U.S.C.A. § 1346(b). See also: Massachusetts Bonding Co. v. United States, 1956, 352 U.S. 128, 77 S. Ct. 186, 1 L.Ed.2d 189; United States v. Gaidys, 10 Cir., 1952, 194 F.2d 762.

3. 176 F.2d at page 484, footnote 1.

4. See Annotations in 18 A.L.R. 678; 22 A.L.R. 1558; 95 A.L.R. 575; 19 A.L.R. 2d 557.

garded in assessing tort damages, has been recognized several times by this court. Brabham v. Baltimore & O. R. Co., 4 Cir., 1914, 220 F. 35, 37–38, L.R.A. 1915E, 1201; Sainsbury v. Pennsylvania Greyhound Lines, 4 Cir., 1950, 183 F.2d 548, 550, 21 A.L.R.2d 266; and most recently in Rayfield v. Lawrence, 4 Cir., 1958, 253 F.2d 209 (applying Virginia law). As this is the law of Virginia, it is controlling in the instant case. Johnson v. Kellam, 1934, 162 Va. 757, 175 S.E. 634; Owen v. Dixon, 1934, 162 Va. 601, 175 S.E. 41; Burks v. Webb, 1957, 199 Va. 296, 99 S.E.2d 629, 636.

Although when the compensation comes from someone other than the defendant, courts are more prone to call it "collateral," and some may always consider it such, without examining closely the nature of the benefit, the fact that it comes from the defendant tortfeasor does not itself preclude the possibility that it is from a collateral source. The plaintiff may receive benefits from the defendant himself which, because of their nature, are not considered double compensation for the same injury but deemed collateral. See, e. g., United States v. Brooks, supra, (as to the insurance benefits); United States v. Gray, 10 Cir., 1952, 199 F.2d 239 (as to hospitalization and medical treatment furnished by the defendant); United States v. Harue Hayashi, 9 Cir., 1960, 282 F.2d 599 (social security benefits).[5]

We think that the benefits received by Price under the Civil Service Retirement Act are essentially from a collateral source, and therefore under the law of Virginia should not be taken into account in computing tort damages. Participation in the retirement program set up by that Act is compulsory for most civilian employees of the United States. Under the program, a separate fund, the Civil Service Retirement and Disability Fund, is maintained and all benefits to participating federal employees come from that special fund. At present, the fund is fed, basically, from two sources: (1) automatic deductions at the rate of 6½% from the salary of all participating employees and (2) regular appropriations by the Government equal to the employee payroll deductions. See 5 U.S.C.A. § 2254(a). Additionally, the fund is augmented by donations from individuals, 5 U.S.C.A. § 2267(b), and the interest earned on the balances not needed for immediate payments, 5 U.S.C.A. § 2267 (c). Finally, the statute provides that the Civil Service Commission "shall submit estimates of the appropriations necessary to finance the fund on a normal cost plus interest basis," 5 U.S.C.A. § 2267(e). The point of time when the employee becomes entitled to retirement benefits depends upon his age, or date of disability, and upon his length of service, 5 U.S.C.A. § 2256 and § 2257. The amount of his retirement payments is based primarily upon his salary and duration of service, 5 U.S.C.A. § 2259.

It is evident, therefore, that the Act establishes a comprehensive program for the retirement of government employees, and is not designed to compensate them for particular injuries suffered. The payments are retirement benefits, payable because of age or disability, and from a special fund derived in large measure from the contributions of the employees. Such benefits are obviously not mere gratuities to injured persons paid on account of their injuries. Rather, the Government in its role of employer has, like many other employers today, set up a retirement plan under which both the employees and the employer con-

5. When compensation does stem from the defendant, it is often a close question whether the defendant would be paying twice for the injury if there is no set-off, and courts will understandingly disagree over the same type of benefit. In the Brooks case, supra, we thought that both the medical benefits and the disability payments, but not the insur- ance payments, should be considered in fixing tort damages. On the other hand, in Gray, supra, the Court of Appeals for the Tenth Circuit, while agreeing with Brooks as to the disability payments, thought that the medical benefits should not be offset. Of course, the cases are not necessarily inconsistent, as the law of different states was applicable.

tribute.[6] These retirement payments are entirely separate from the Government's acknowledged statutory duty as tort-feasor to pay any injured person for particular injuries resulting from negligence imputed to it. The two types of payments come from different sources, since tort payments are made from general revenues, while retirement benefits, on the other hand, are from the fund created in part by the employees themselves.

Moreover, although there appear to be no cases specifically deciding this precise issue, such authority as exists supports the view that benefits of this character should not be set-off against the recovery for tort. Several courts have had occasion to consider this question in relation to retirement benefits under the Railroad Retirement Act, 45 U.S.C.A. § 228a et seq. The retirement plan under that Act is very similar to the one under the Civil Service Retirement Act, in that a fund is created partly by contributions from the employees and partly by contributions from the employer railroads, with the Government making additional payments if needed. Upon disability, an employee may become entitled to the retirement benefits. Where railroad employees have been disabled because of negligence and have sued their employers under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., the courts have uniformly held that the retirement benefits could not be considered in calculating damages. See: McCarthy v. Palmer, D.C.E.D.N.Y.1939, 29 F.Supp. 585, affirmed 2 Cir., 1940, 113 F.2d 721, certiorari denied 311 U.S. 680, 61 S.Ct. 50, 85 L.Ed. 438; New York, New Haven & Hartford R. Co., v. Leary, 1 Cir., 1953, 204 F.2d 461; Sinovich v. Erie Railroad Company 3 Cir., 1956, 230 F.2d 658; Hetrick v. Reading Co., D.C.D.N.J.1941, 39 F.Supp. 22.

State courts dealing with analogous problems have held that one liable for tort damages may not claim a credit, in reduction of his liability, for sums payable to the plaintiff from a pension fund. Rusk v. Jeffries, 1933, 110 N.J.L. 307, 164 A. 313; 25 C.J.S. Damages § 99, page 649, footnote 8.

Finally, in a case even more closely resembling the present one, the Court of Appeals for the Ninth Circuit has recently decided that federal social security benefits, received from the Government, should not lessen the damages in a Tort Claims action against the Government. United States v. Harue Hayashi, 9 Cir., 1960, 282 F.2d 599. Judge Hamley's opinion in that case also dealt with the problem of civil service retirement benefits and he took the position that neither those benefits nor social security benefits should be offset against the personal injury award. The court drew a distinction between "injury-related benefits payable from unfunded general revenues," such as the hospitalization and disability payments in the Brooks case, supra, and benefits "from a special fund supplied in part by the beneficiary or a relative upon whom the beneficiary is dependent," such as National Service Life Insurance awards, civil service retirement benefits, or social security payments.[7] While the former should be taken into account in fixing tort damages, it was specifically held that the latter should not.

---

6. In another case involving the same issue as the instant one, and argued before us at the same time, Jennings v. United States, —— F.2d —— there was testimony by the Chief of the Claims Section, Retirement Division, of the United States Civil Service Commission, to the effect that one of the objectives of the retirement program was to make federal employment comparable to and as attractive as private employment. It was brought out that the retirement plan is considered an emolument, one of the fringe benefits of the job, and that one of its purposes is to retain qualified employees in government service. Under this view, it could be argued that the employees actually contribute more than 6½% of their salaries, for what the Government contributes to the fund might be deemed further consideration for the services of persons in government employment.

7. See 282 F.2d at page 603.

**452**

Because of the nature of awards under the Civil Service Retirement Act, and in consonance with adjudications concerning similar benefits, we hold that the retirement benefits here are from a "collateral source." The decision of the District Court in refusing to permit such benefits to diminish the tort damages is

Affirmed.