Lillie VALDEZ, Petitioner,

v.

Olga RAMIREZ and Tomas Valdez,
Jr., Respondents.

No. B–7272.

Supreme Court of Texas.

July 26, 1978.

Rehearing Denied Dec. 13, 1978.

James M. Heidelberg, San Antonio, for petitioner.

Mitchell, Stewart & Hemmi, Kirk Patterson, San Antonio, for respondents.

DANIEL, Justice.

The issue presented by this case is whether a husband's community interest in his surviving wife's civil service retirement benefits is inheritable upon his death by adult children of his former wife. We hold that it is not.

Lillie Valdez had worked as a United States Civil Service employee for 352 months prior to her retirement in 1971. For 340 months of her employment she was married to Tomas Valdez, Sr. Based on her 352 months of service she began receiving retirement benefits in 1971 under the Federal Civil Service Retirement Act. 5 U.S.C.A. § 8331, et seq. In 1973, Tomas, Sr., died intestate, leaving Olga Ramirez and Tomas Valdez, Jr., his adult children by a previous marriage, as the heirs to his half of the community estate.

Olga and Tomas, Jr., brought this suit to recover a portion of Lillie's retirement benefits based on Tomas, Sr.'s, community interest in the benefits. After a non-jury trial, the trial court rendered judgment for Olga and Tomas, Jr., awarding them one-half of 340/352 of the retirement benefits that Lillie has received since Tomas, Sr.'s, death and that she will receive in the future. The Court of Civil Appeals affirmed. 558 S.W.2d 88. We reverse the judgments of the courts below and render judgment that plaintiffs take nothing against Lillie Valdez.

A settled marital property rule in Texas is that a spouse has a community property interest in that portion of the retirement benefits of the opposite spouse earned during their marriage. *Taggart v. Taggart*, 552 S.W.2d 422 (Tex.1977); *Cearley v. Cearley*, 544 S.W.2d 661 (Tex.1976); *Busby v. Busby*, 457 S.W.2d 551 (Tex.1970). In each of the above cases, the non-employed spouse was alive, and we dealt with the question only as it concerned fixed or contingent rights in a division of the community asset upon divorce. We found no conflict between our application of Texas' community property law and federal laws which provided such benefits.

The question in this case is different and is one of first impression in this State. It calls for a decision of whether the interest of a spouse who died prior to any division or divorce should pass to his heirs under the Texas Probate Code § 45, or should be paid to the living and earning spouse in accordance with a joint survivorship option which she had exercised under the Federal Civil Service Retirement Act. 5 U.S.C.A. § 8339.

At the outset, it is recognized that under ordinary circumstances, where there is no contract or provision of law to the contrary, Section 45 of the Texas Probate Code would govern the distribution of a deceased spouse's interest in the community property as the Court of Civil Appeals has ruled.[1]

1. Section 45 of the Texas Probate Code Annotated, states:

"Upon the dissolution of the marriage relation by death, all property belonging to the community estate of the husband and wife shall go to the survivor, if there be no child or children of the deceased or their descend-ants; but if there be a child or children of the deceased, or descendants of such child or children, then the survivor shall be entitled to one-half of said property, and the other half shall pass to such child or children, or their descendants. But such descendants shall inherit only such portion of said property as

■ On the other hand, however, there are at least four categories of assets known as non-probate assets, not subject to disposition by will and not subject to the rules of intestate distribution. Examples are (1) property settled in an intervivos trust, where title remains in the trustee notwithstanding the settlor's death;[2] (2) property passing by right of joint survivorship, as in a valid joint bank account; (3) property passing at death pursuant to terms of a contract, such as provided in life insurance policies, and under contributory retirement plans;[3] and (4) property passing by insurance or annuity contracts created, funded and distributed as directed by federal statutes.[4] In the context of the Texas community property system, this disposition of such nonprobate assets is governed by lifetime transfer rules, not by death-time transfer rules of the Probate Code. See Johanson, Revocable Trusts and Community Property: The Substantive Problems, 47 Texas L.Rev. 537 (1969).

Lillie Valdez's retirement benefits were provided for by her contract of employment as a civil service employee of the United States Government. *United States v. Price*, 288 F.2d 448, 450–51 (4th Cir. 1961). The terms and considerations of her employment and compensation are set out in Part III of the Civil Service Act, 5 U.S.C.A. §§ 2101–8913. Included in that portion of the Act is a comprehensive program providing retirement benefits for civil service employees. 5 U.S.C.A. §§ 8331–8348. Upon retirement, employees are paid benefits under the Act based on their contributions to the retirement program and length of government service. *United States v. Price, supra. See* 5 U.S.C.A. §§ 8334, 8339.

The Civil Service Act specifies which persons are entitled to receive retirement benefits. Provisions are made only for payment to the employee, or, in the case of the employee's death, to the surviving spouse and the employee's children under 18 years of age (with age exceptions for incapacitated children and students). 5 U.S.C.A. § 8341. The Act provides for no payment to persons outside of the employee's immediate family.[5] It would be contrary to the whole contract, policy, and plan of the Retirement Act for nearly one-half of Mrs. Valdez's monthly payments to be taken from her and awarded to her deceased husband's adult children. This would subvert the underlying purpose of the Act, which is to provide financial support and security to aged employees and their immediate families. See *United States v. Price, supra.* It is also contrary to the election made by Mrs. Valdez under § 8339(j) for a joint survivor annuity for the benefit of herself and her husband.

■ While Lillie Valdez was employed by the federal government and earning future rights to a retirement annuity, those contingent rights were community property, but such inchoate rights are characterized by the Family Code as "special community" under the wife's sole management and control. Section 5.22(a) of the Texas Family Code provides:

"During marriage, each spouse has sole management, control and disposition of

---

the parent through whom they inherit would be entitled to if alive. In every case, the community estate passes charged with the debts against it.

**2.** *Westerfeld v. Huckaby*, 474 S.W.2d 189 (Tex. 1971).

**3.** *H. J. Mullins & Co. v. Thompson*, 51 Tex. 7 (1879); *Kirkland v. Kirkland*, 359 S.W.2d 651 (Tex.Civ.App.1962, writ ref'd n. r. e.); *Buehler v. Buehler*, 323 S.W.2d 67 (Tex.Civ.App.1959, writ ref'd n. r. e.).

**4.** *United States v. Price*, 288 F.2d 448, 450–51 (4th Cir. 1961); *Wissner v. Wissner*, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950).

**5.** The Act's policy of retaining the benefits in the hands of the intended recipients is exhibited in the protections of 5 U.S.C.A. § 8346(a), which provides: "The money mentioned by this subchapter [the Civil Service Retirement Act] is not assignable, either in law or equity, except under the provisions of section 8345(g) of this title [which gives the Civil Service Commission the power to approve assignments], or subject to execution, levy, attachment, garnishment, or other legal process, except as otherwise may be provided by Federal laws." Prior to 1975 the assignment prohibition of § 8346(a) was absolute.

the community property that he or she would have owned if single, including but not limited to:

"(1) personal earnings;

". . .

"(4) the increase and mutations of, and the revenue from, all property subject to his or her sole management, control and disposition."

Thus, while being earned, the right to a future Civil Service retirement annuity was the special community of Lillie Valdez, subject to her sole management, control and disposition. As manager of this "special community" asset, she had the contract right to select a mode of payment. As indicated, she selected the joint and survivor option in accordance with 5 U.S.C.A. § 8339. Although this option provided a lower monthly payment to her and her husband while both were living, and a lower payment to her if she survived him, it also created in the husband a right to an annuity if he survived her. 5 U.S.C.A. § 8341. At the time of the exercise of this option, the inchoate and contingent right of the community to future retirement annuity payments was fixed by federal statute. By virtue of Lillie Valdez's election to take a joint and survivor annuity, this annuity constituted community income during their joint lives. Mr. Valdez along with Mrs. Valdez had full enjoyment of this matured community asset during their joint lives. Had Mr. Valdez survived his wife, he would have succeeded to full enjoyment of the survivor portion of the annuity payments; no interest therein would have been included in Mrs. Valdez's probate estate to pass under her will or by intestacy. Since Mr. Valdez predeceased Mrs. Valdez, we hold

that she succeeded to the survivor portion of the annuity benefit as set forth in the terms of the contract with her employer, the United States Government. These annuity benefits should continue to be paid to her in accordance with the terms of the Civil Service Retirement Act.

Accordingly, the judgments of the courts below are reversed and judgment is here rendered that plaintiffs take nothing from Lillie Valdez.

## ON MOTION FOR REHEARING

In their motion for rehearing Respondents Ramirez and Valdez, Jr. make two attacks on our treatment of the Civil Service Retirement benefits in this case as a joint survivorship annuity payable solely to Petitioner Lillie Valdez after the death of her husband.

■ First, Respondents argue that no joint and survivorship annuity option or payment is provided for by 5 U.S.C.A. § 8339, et seq. of the Civil Service Retirement Act. While the Act does not use the explicit term, the effect is to permit the creation of a joint and survivorship annuity, and that is precisely the term and intent which Congressional Committees have applied to the plan since its inception.[1]

The first joint and survivorship provision was added to the Civil Service Retirement Act by P.L. 76–263, 53 Stat. 1200, effective January 1, 1940. In reporting on the proposed amendment (S. 281), the Senate Committee on Civil Service explained the relevant section 3 as adding "a provision to the existing law permitting an employee to select one of two joint-survivorship annuity plans . . ."[2] The House Civil Service

1. The Civil Service Retirement Act approved May 29, 1930, originally provided for an annuity payable only to and during the life of the retired employee. As early as 1936 amendments were proposed for "a joint and survivorship annuity" which would give the retiring employee a choice of receiving the existing maximum life benefits or a lesser "joint and survivorship annuity" of "equivalent actuarial value" but with one-half of the annuity being continued throughout the life of a designated

beneficiary. See H.R. 12717, 74th Cong., 2d Sess., 80 Cong.Rec. 9464, June 15, 1936.

2. Senate Report No. 122, p. 2, 76th Cong., 1st Sess. 1939. Appended to this Report was a letter from the President of the Civil Service Commission containing the following comment on Section 3, subsequently enacted as Sec. 2(d):

"Referring to section 3 of the proposed amended bill, the Commission has repeatedly expressed itself in favor of *joint and survivor-*

Committee made similar comments in its Report on S. 281.[3] The Conference Committee of the two Houses agreed upon the following language which was enacted as Sec. 2(d) of P.L. 76–263:

"(d) Any employee retiring under the provisions of section 1 of this Act may at the time of his retirement elect to receive in lieu of the life annuity described herein a reduced annuity payable to him during his life, and an annuity after his death payable to his beneficiary, duly designated in writing and filed with the Civil Service Commission at the time of his retirement, during the life of such beneficiary (a) equal to or (b) 50 per centum of such reduced annuity and upon the death of such surviving beneficiary all payments shall cease and no further annuity shall be due or payable. The amounts of the two annuities shall be such that their combined actuarial value on the date of retirement as determined by the Civil Service Commission shall be the same as the actuarial value of the single life increased annuity with forfeiture provided by this section: Provided, That no election in lieu of the life annuity provided herein shall become effective in case an employee dies within thirty days after the effective date of retirement, and in the event of such death within this period, such death shall be considered as a death in active service."

Between 1940 and the time of Mrs. Valdez's retirement in 1971, Congress made several amendments to the above provision. Each time the legislative history shows that it was described as "a joint and survivorship annuity." The first of these amendments was contained in Sec. 4(b) of P.L. 80–426, 62 Stat. 48, effective April 1, 1948. It limited

the option of a married person's joint survivorship annuity to his spouse and to an amount equal to 50 percent of the reduced life annuity, with termination on the death or remarriage of the surviving spouse. A subsequent amendment in 1956 left the 1948 provision substantially the same except for dividing the annuity payment provision into two sections, Sec. 9(g) and Sec. 10 of P.L. 84–854, 70 Stat. 736, 752, effective October 1, 1956. The annuity provision in existence at Mrs. Valdez's retirement in 1971 and codified in 5 U.S.C.A. § 8339(i) and § 8341 was enacted in P.L. 87–793, 76 Stat. 832, 868, effective October 11, 1962. This last change consisted of an increase in the surviving spouse's annuity payments from 50% to 55% of the basic joint annuity and a provision making the survivorship annuity automatic if the retiring married employee elected in writing not to receive the larger single life annuity and not to prevent the survivorship annuity from becoming effective.

The reason for detailing this congressional history of the relevant provisions of the Act is to demonstrate that Congress has long permitted a retiring federal employee spouse (a) to elect to receive the higher maximum single life annuity (which terminates at death), or (b) to elect, in lieu thereof, to receive a reduced amount as a joint and survivorship annuity which amount is used as the basis for the annuity payable to the retired married employee as long as he or she survives, and also as the basis for the other spouse's portion of the joint annuity if that spouse should be the survivor. Finally, discussion of legislative history has shown that the provision in question has been consistently termed and treated by the Congress as a "joint and survivor annuity."[4]

---

*ship benefits* which will authorize annuities on a reduced basis with continuation of payments to a designated beneficiary, the combined annuities to be the same as the actuarial value of an increased annuity on a forfeiture basis." (Emphasis supplied).

3. House Report, No. 840, p. 6, House Committee on Civil Service, 76th Cong., 1st Sess. 1939.

4. See legislative history of P.L. 80–426, S.Rep. No. 746, 80th Cong., 2d Sess., *reprinted in*

[1948] U.S. Code Cong. & Admin. News, pp. 1107, 1112; P.L. 84–854 *discussed in* S.Rep. No. 2642, 84th Cong., 2d Sess., *reprinted in* [1956] U.S. Code Cong. & Admin. News, pp. 3734–35, where plan is referred to as "a joint and survivorship annuity" six times; P.L. 87–793 *discussed in* S.Rep. No. 2120, 87th Cong., 2d Sess., *reprinted in* [1962] U.S. Code Cong. & Admin. News, pp. 3047–48, 3070.

By electing to give up her maximum higher single life annuity which (even though community property) would absolutely terminate at her death, Mrs. Valdez received for herself and her husband a matured right to receive future income from the joint and survivor annuity under the terms of the Civil Service Retirement Act. Since he predeceased her, the Act provides that she shall continue to receive the payments during her lifetime.[5]

Respondents' second point urges that Mrs. Valdez could not elect to create a valid joint survivorship in this instance because community property cannot be the subject of a joint survivorship agreement under Texas law. *Williams v. McKnight,* 402 S.W.2d 505 (Tex.1966); *Hilley v. Hilley,* 161 Tex. 569, 342 S.W.2d 565 (1961). As indicated in our original opinion, we are dealing here with a type of joint and survivorship annuity which was created by federal law. The Civil Service Retirement Act has a clearly declared federal purpose of providing a definite amount of financial support and security for retired federal employees, their spouses, and certain children of retired employees. A joint survivorship annuity clearly authorized by federal law to serve a federal purpose may preempt conflicting state laws in the absence of its use to perpetuate a fraud by one spouse on the other. *Free v. Bland,* 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962). In the instant case there has been no suggestion that Mrs. Valdez made the election authorized by the Civil Service Retirement Act for any purpose other than to provide for herself and her husband the broadest possible joint and survivorship benefits payable under the federal Act.

The motion for rehearing is overruled.

---

**5.** Mrs. Valdez's payments continued after her husband's death on the same reduced basis which she elected upon retirement until Congress amended the Act in 1974 to provide that such payments to widowed retirees shall be recomputed and paid as if the annuity had not been reduced for each month that the retired employee remains unmarried. P.L. 93–474, 88 Stat. 1438, 5 U.S.C.A. § 8339(j).