# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-20037

United States Court of Appeals
Fifth Circuit

**FILED**

May 18, 2020

Lyle W. Cayce
Clerk

KINDER MORGAN, INCORPORATED,

> Plaintiff - Appellee

v.

JOANNE CROUT,

> Defendant - Appellee

v.

JANILLE ALYSE CROUT; JAY ALLEN CROUT; DANNY LEE CROUT, JR.; THE ESTATE OF DANNY LEE CROUT,

> Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-cv-509

Before SMITH, GRAVES, and HO, Circuit Judges.

PER CURIAM:*

Appellants Janille Alyse Crout, Jay Allen Crout, Danny Lee Crout, Jr., (collectively, "the Crout children") and the Estate of Danny Lee Crout ("the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-20037

Estate") appeal from the district court's final judgment. Appellants essentially argue that the probate exception to federal jurisdiction and the *Burford* abstention doctrine divested the district court of jurisdiction over this action, and that the district court erred in granting Appellee Joanne Crout ("Mrs. Crout") summary judgment and abused its discretion in denying Appellants post-judgment leave to amend their counterclaim. We AFFIRM.

## BACKGROUND

Danny Lee Crout ("Mr. Crout") was an employee of Kinder Morgan, Inc. He participated in Appellee Kinder Morgan, Inc. Saving Plan's[1] ("Kinder Morgan") employee savings plan ("the plan")[2] until his death in 2016. Primarily at issue is whether the Crout children or Mrs. Crout is the appropriate beneficiary of the benefits accrued under the plan. The plan provided two alternate schemes by which accrued benefits would be disbursed upon the death of a plan participant. Simply put, the first scheme applied to plan participants who designated a beneficiary, whereas the second scheme applied to plan participants who did not designate a beneficiary.

Under the first scheme, in relevant part:

> Any Participant may from time to time designate, in writing, any person or persons, contingent or successively, to whom the Trustee shall pay his or her Accrued Benefit on event of death. A married Participant's Beneficiary designation of any person other than his or her Spouse is not valid unless the Participant's Spouse consents to the Beneficiary designation or unless the Participant and his or her Spouse are not married throughout the one (1) year period ending on the date of the Participant's death. The Spouse's

---

[1] While the Kinder Morgan, Inc. Savings Plan provides benefits to Kinder Morgan, Inc. employees, it is a separate entity from Kinder Morgan, Inc. and is the party that brought this action. *See* 29 U.S.C. § 1132(d)(1) ("An employee benefit plan may sue or be sued under this subchapter as an entity.").

[2] It is undisputed that the plan is an Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*., plan.

2

## No. 19-20037

consent must be in writing and a notary public or the Plan Supervisor (or his/her representative) must witness the consent.

Under the second scheme, if a plan participant did not designate a beneficiary, then the accrued benefits would be disbursed, in the following order of priority, to:

(a)    The Participant's surviving Spouse;

(b)    The Participant's surviving children, including adopted children, in equal shares;

(c)    The Participant's surviving parents, in equal shares; or

(d)    The legal representative of the estate of the last to die of the Participant and his Beneficiary.

Mrs. Crout, Kinder Morgan, and Appellants dispute whether Mr. Crout designated a beneficiary under the plan.[3] After Mr. Crout's death, Mrs. Crout and the Crout children filed separate claims with Kinder Morgan, seeking disbursement of the accrued benefits.[4] Kinder Morgan informed Mrs. Crout that, as Mr. Crout's "surviving spouse," she is the "default primary beneficiary" and "eligible to receive 100% of the total amount" of the accrued benefits. Accordingly, Kinder Morgan denied the Crout children's claim because Kinder Morgan did "not have a valid beneficiary designation on file in favor of the claimant[s]." The Crout children appealed this determination through Kinder Morgan's internal appeals process, and the denial was affirmed.

Kinder Morgan then filed an interpleader action against Appellants and Mrs. Crout in the district court pursuant to ERISA and Federal Rule of Civil

---

[3] Appellants argue that Mr. Crout designated the Crout children as beneficiaries under the plan whereas Mrs. Crout and Kinder Morgan argue that no beneficiary was designated under the plan and, thus, Mrs. Crout—as Mr. Crout's surviving spouse—is entitled to receive the accrued benefits.

[4] Additionally, in state probate court, Janille Crout applied for the independent administration of Mr. Crout's estate, to determine the identities of Mr. Crout's heirs, and to probate Mr. Crout's will pursuant to Texas law. *See In the Estate of Crout*, No. 16-CPR-029032 (Fort Bend Cty., Tex., Cty. Court at Law No. 5); *In the Estate of Crout*, No. 16-CPR-029160 (Fort Bend Cty., Tex., Cty. Court at Law No. 5).

No. 19-20037

Procedure 22, seeking a judgment that would declare the lawful beneficiary or beneficiaries of the accrued benefits. The Crout children and Mrs. Crout filed separate counterclaims under ERISA, each seeking a judgment awarding them the accrued benefits and a declaration that they are the only proper beneficiary or beneficiaries.

Kinder Morgan moved to deposit the accrued benefits in the district court's registry and for the district court to dismiss it from the action. Although Appellants initially opposed the motion, they later withdrew their opposition, and the district court granted the motion.

Mrs. Crout moved for summary judgment on her counterclaim, which Appellants opposed, arguing that Mrs. Crout's marriage to Mr. Crout was invalid. Appellants further argued that Mr. Crout had designated the Crout children as his beneficiaries in a prior savings plan and that plan and its attendant terms and participant beneficiary designations had merged into the Kinder Morgan plan.

Appellants, for their part, moved to dismiss Mrs. Crout's counterclaim and the underlying interpleader action, primarily arguing that the district court lacked jurisdiction over the action because the accrued benefits are an asset of the Estate over which a state probate court—the Fort Bend County, Texas, County Court at Law No. 5—had already asserted jurisdiction. The district court denied Appellants' motion, granted Mrs. Crout summary judgment, declared Mrs. Crout the only lawful beneficiary of the accrued benefits, disbursed the accrued benefits to Mrs. Crout, and entered final judgment.

Post-judgment, Appellants moved for a temporary restraining order, leave to file an amended counterclaim and a third-party complaint, and to amend the final judgment. The district court denied each of these motions. Appellants timely appealed.

4

No. 19-20037

## STANDARDS OF REVIEW

This appeal implicates several standards of review. First, "[t]his court conducts a *de novo* review to determine whether a lower court had subject matter jurisdiction to entertain a case." *In re U.S. Abatement Corp.*, 39 F.3d 563, 566 (5th Cir. 1994). And "we review *de novo* whether the requirements of a particular abstention doctrine are satisfied." *Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014) (internal quotation marks and citation omitted).

Second, "[w]e review a grant of summary judgment *de novo*, applying the same standard as the district court." *Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013) (italics added). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting FED. R. CIV. P. 56(a)).

Third, generally, a "motion for leave to amend falls under Federal Rule of Civil Procedure 15(a)," because the Rule "govern[s] the amendment of pleadings[.]" *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (emphasis omitted); FED. R. CIV. P. 15(a)(2) (stating that "a party may amend its pleading only with the opposing party's written consent or the court's leave" when amendment is unavailable under Rule 15(a)(1), as here). However, a post-judgment motion for leave to amend "must be treated as a motion under Rule 59(e), not Rule 15(a)," *Rosenzweig,* 332 F.3d at 864, as Rule 59(e) "govern[s] the amendment of judgments[.]" *Id.* at 863 (emphasis omitted). Still, "under these circumstances, the considerations for a Rule 59(e) motion are governed by Rule 15(a)[.]" *Id.* at 864. "[W]e review the district court's denial of [a Rule] 59(e) motion for abuse of discretion, in light of the limited discretion of Rule 15(a)." *Id.* This discretion is limited because Rule 15(a) "evinces a bias in favor of granting leave to amend." *Id.* at 863 (internal

quotation marks and citation omitted); *see* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

In determining whether to grant or deny leave to amend, a court may consider, among other things, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Absent such factors, the leave sought should, as the rules require, be freely given." *Rosenzweig*, 332 F.3d at 864 (internal quotation marks and citation omitted).

## DISCUSSION

First, the probate exception to federal jurisdiction does not apply here. A federal court "has no jurisdiction to probate a will or administer an estate[.]" *Curtis v. Brunsting*, 704 F.3d 406, 408 (5th Cir. 2013) (quoting *Markham v. Allen*, 326 U.S. 490, 494 (1946)). In other words, the probate exception has "a distinctly limited scope" and:

> reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Id.* at 409 (quoting *Marshall v. Marshall*, 547 U.S. 293, 310–12 (2006)). To determine whether the probate exception deprives a federal court of jurisdiction, we require "a two-step inquiry into (1) whether the property in dispute is estate property within the custody of the probate court and (2) whether the plaintiff's claims would require the federal court to assume *in rem* jurisdiction over that property." *Id.*

Notably, however, this court has described the probate exception as one that applies to "diversity jurisdiction." *Id.* at 408–09. The parties do not cite

a decision by this court—and we are unaware of one—in which we determined that the probate exception applies to federal-question jurisdiction, the type of jurisdiction relevant here. *Cf. United States v. Bailey*, 115 F.3d 1222, 1231 (5th Cir. 1997) ("The domestic relations exception [to federal jurisdiction] obtains from the diversity jurisdiction statute and therefore it has no application where, as here, there exists an independent basis for federal jurisdiction. . . . The [Child Support Recovery Act] in no way endeavors to regulate [domestic relations matters that are in the unique province of state courts to decide]; it seeks merely to *enforce* a child support order already promulgated by a state court.") (citations and footnote omitted) (emphasis in original); *Jones v. Brennan*, 465 F.3d 304, 306 (7th Cir. 2006) ("The probate exception is usually invoked in diversity cases, and the courts are divided over its applicability to federal-question cases, such as this case.") (collecting cases). We need not resolve this question because Appellants would fail to satisfy the first step of the probate exception inquiry outlined above anyway. *Curtis*, 704 F.3d at 409 ("As a threshold matter, the probate exception only applies if the dispute concerns property within the custody of a state court.").

In Texas, "there are at least four categories of assets known as non-probate assets, not subject to disposition by will and not subject to the rules of intestate distribution." *Valdez v. Ramirez*, 574 S.W.2d 748, 750 (Tex. 1978). One such category—relevant here—is "property passing at death pursuant to terms of a contract, such as provided in life insurance policies, and under contributory retirement plans[.]" *Id.* The plan falls into this category: the plan makes clear that a plan participant's accrued benefits will pass at death pursuant to the terms of the plan, as outlined above. As such, the accrued benefits are not estate property. *See Tarrant v. Halliburton Energy*, 71 F.3d

878, 1995 WL 726689, at *2 (5th Cir. 1995) (unpublished)[5] ("The execution of [an ERISA-employee savings plan participant's] new will did not alter his beneficiaries [under the plan], because an employee pension plan is not part of the estate that passes by will under Texas law.") (citing *Valdez*, 574 S.W.2d at 750); *see also Curtis*, 704 F.3d at 409–10 ("Assets placed in an inter vivos trust generally avoid probate, since such assets are owned by the trust, not the decedent, and therefore are not part of the decedent's estate."). Neither are the accrued benefits in a state probate court's custody nor were they ever in a state probate court's custody. *Cf. Curtis*, 704 F.3d at 409 ("The federal court cannot exercise *in rem* jurisdiction over a *res* in the custody of another court."). The accrued benefits were in Kinder Morgan's custody until such time that they were deposited into the district court's registry and then disbursed to Mrs. Crout. Accordingly, this action would not be subject to the probate exception even if the exception were to apply to federal-question jurisdiction.

Second, neither does the *Burford* abstention doctrine apply here. While "federal courts have a virtually unflagging obligation to exercise the jurisdiction given them," *Aransas Project*, 775 F.3d at 649 (internal quotation marks, ellipsis, and citation omitted), "the court[s] ha[ve] the power and[,] in an appropriate case[,] the duty to order abstention, if necessary for the first time at the appellate level[.]" *Waldron v. McAtee*, 723 F.2d 1348, 1351 (7th Cir. 1983). The Supreme Court has extended the applicability of abstention doctrines to "all cases in which a federal court is asked to provide some form of discretionary relief." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996); *see also id.* at 718 ("We have not limited the application of the abstention doctrines to suits for injunctive relief, but have also required federal

---

[5] In this court, unpublished opinions issued before January 1, 1996, are precedent. 5TH CIR. R. 47.5.3.

courts to decline to exercise jurisdiction over certain classes of declaratory judgments, the granting of which is generally committed to the courts' discretion[.]") (citations omitted).

In *Burford v. Sun Oil Company*, 319 U.S. 315 (1943), specifically, the Supreme Court described a "'federal-state conflict' [] requir[ing] a federal court to yield jurisdiction in favor of a state forum." *Quackenbush*, 517 U.S. at 723 (quoting *Burford*, 319 U.S. at 332–333); *see also Aransas Project*, 775 F.3d at 649 ("The Court in *Burford* delineated an area of abstention where the issues so clearly involve basic problems of State policy that the federal courts should avoid entanglement.") (internal quotation marks, brackets, and citation omitted).  In this court, we have consistently applied five factors in deciding whether to abstain under *Burford*:

> (1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review.

*Aransas Project*, 775 F.3d at 649 (quoting *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993)).

None of these factors supports abstention here.  This action and each counterclaim arise under federal law, specifically, ERISA.  The action and counterclaims are not "in any way entangled in a skein of state-law that must be untangled before the federal case can proceed[.]" *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (internal quotation marks and citation omitted).  As discussed, the accrued benefits are not estate property or otherwise in the probate court's custody.  The resolution of this case does not require inquiry into issues of state law—let alone unsettled issues of state law—or into local facts, and no state interest is clearly involved.  *Cf. Duggins v. Fluor Daniel, Inc.*, 217 F.3d 317, 319 (5th Cir. 2000)

("ERISA preempts 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.'") (quoting 29 U.S.C. § 1144(a)); *see also id.* ("[A] court need not even reach the issue of preemption where it can resolve the validity of the designation without going beyond the terms of the plan itself.") (quotation marks, citation, and brackets omitted); *Nickel v. Estate of Estes*, 122 F.3d 294, 298 (5th Cir. 1997) ("ERISA plans are to be administered according to their controlling documents. . . . [I]f the designation on file controls, administrators and courts need look no further than the plan documents to determine the beneficiary[.]") (quoting *McMillan v. Parrott*, 913 F.2d 310, 312 (6th Cir. 1990)).

Further, the state does not have a need for a coherent policy in a subject area which does not involve state law and in which the state has no clear interest. Nor is there a special state forum for judicial review of this action's subject; instead, ERISA states that federal courts should resolve most types of actions that may be brought pursuant to ERISA, including the type of action at issue here. *See* 29 U.S.C. § 1132(a)(3)(B) (empowering a plan fiduciary to bring an action such as the one here); *id.* at § 1132(e)(1) (stating that "the district courts of the United States shall have exclusive jurisdiction of civil actions [brought] under [§ 1132(a)(3)(B).]"); *see also Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1259 (5th Cir. 1980) (stating that a fiduciary may bring civil actions under § 1132(a) and that "federal district courts shall have exclusive jurisdiction of such actions" pursuant to § 1132(e)); *accord Metropolitan Life Ins. Co. v. Bigelow*, 283 F.3d 436, 439–40 (2d Cir. 2002); *Central States, Se. & Sw. Areas Pension Fund v. Howell*, 227 F.3d 672, 674 n.2 (6th Cir. 2000); *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1033–34 (9th Cir.

2000). Accordingly, *Burford* abstention would be inappropriate here as no factor supports it.[6]

Third, the district court properly granted Mrs. Crout summary judgment. "At the outset, we note that a written ERISA plan generally controls the distribution of plan benefits." *Tarrant*, 1995 WL 726689, at *1 (citing *Rodrigue v. Western & Southern Life Ins. Co.*, 948 F.2d 969 (5th Cir. 1991); *In re HECI Exploration Co.*, 862 F.2d 513, 524 (5th Cir. 1988)). Under the plan here, a plan participant's surviving spouse is the beneficiary of any accrued benefit when the plan participant has not designated a beneficiary. Mrs. Crout showed that she is Mr. Crout's surviving spouse and that Mr. Crout had not designated a beneficiary by the time of his death. *See* 29 U.S.C. § 1055(c)(2) (requiring, in general, an ERISA plan to pay benefits to the plan participant's surviving spouse unless that spouse has consented to the plan participant's designation of a non-spouse beneficiary).

Appellants' attempts to show a genuine issue of material fact about whether Mrs. Crout is the appropriate beneficiary fail. At the district court, Appellants argued that summary judgment would be improper because (1) Mr. Crout had designated the Crout children as his beneficiaries under the Occidental Petroleum Savings Plan ("Oxy plan"), in which Mr. Crout participated before joining the Kinder Morgan plan, and that the Oxy plan's terms and participant beneficiary designations had "moved over" into the Kinder Morgan plan when Kinder Morgan acquired the Oxy plan; and (2) Mrs. Crout's marriage to Mr. Crout was invalid. On appeal, however, Appellants

---

[6] Appellants' argument that the district court erred by distributing the accrued benefits to Mrs. Crout instead of to the state probate court fails for the same reasons discussed above regarding the probate exception and *Burford* abstention doctrine. *See Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999) ("After entering a judgment in [an] interpleader action[,] the district court also has the power to make all appropriate orders to enforce its judgment.") (citing 28 U.S.C. § 2361).

essentially argue that (1) Mr. Crout designated his children as his beneficiaries under several savings plans preceding the Kinder Morgan plan, evidencing Mr. Crout's habit of designating his children as his beneficiaries; (2) the Oxy plan and its attendant terms and beneficiary designations merged into the Kinder Morgan plan; (3) Mr. Crout's will evidences his intent to "exclude" Mrs. Crout from receiving the accrued benefits under the plan; and (4) the accrued benefits at the time of Mr. Crout's death were similar to the projected accrued benefits under a previous plan in which Mr. Crout participated, evidencing a merger.[7] We consider only Appellants' argument that the Oxy plan's terms and participant beneficiary designations "moved over" into the Kinder Morgan plan when Kinder Morgan acquired the Oxy plan. Appellants forfeited their other arguments. *See In re Novack*, 639 F.2d 1274, 1276–77 (5th Cir. Unit B Mar. 1981) ("As a general rule, appellate courts refuse to consider an issue raised for the first time on appeal."); FED. R. CIV. P. 56(c)(3) ("The court need consider only the cited materials[.]").

Appellants' argument regarding the Oxy plan is unavailing. Mrs. Crout's evidence—when read in light of the terms of the Kinder Morgan plan— shows that she is the appropriate beneficiary under the plan. *See supra.* We cannot ask Mrs. Crout to prove a negative and show that a merger did not occur

---

[7] Appellants also represent:

> [T]he Court was wrong when he stated that (1) [sic] only evidence before this court is that Mr. Crout's marriage to [Mrs. Crout] was valid and she is Mr. Crout's surviving spouse. That is [sic] only outrageous and false but a disregard to [sic] this Court [sic] overwhelming precedents and Federal Rule of Evidence section 406[, regarding habit evidence].

Appellants do not otherwise develop, on appeal, their argument regarding the validity of Mrs. Crout's marriage to Mr. Crout. Because the argument is not adequately briefed, we decline to address it. *See In re HECI Exploration Co., Inc.*, 862 F.2d at 525 (declining to address an issue that was listed in a brief but not otherwise argued).

in the first instance.[8]  Appellants had to provide evidence that the Oxy plan and its attendant terms and participant beneficiary designations merged into the Kinder Morgan plan to create a genuine issue of material fact about Mrs. Crout's beneficiary status.  *See Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000) ("Courts consider the evidence in the light most favorable to the nonmovant, yet the nonmovant may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial.").  Instead, Appellants proffered evidence of Mr. Crout's beneficiary designations under the Oxy plan.  This is not proof of a merger.  Accordingly, the district court properly granted Mrs. Crout summary judgment.

Fourth, the district court did not abuse its discretion in denying Appellants' post-judgment motion for leave to file an amended counterclaim, which would have—among other things—re-added Kinder Morgan as a party and alleged that Kinder Morgan breached its fiduciary duty under ERISA.  The district court reasoned that it dismissed Kinder Morgan from the action on February 9, 2018, which was approximately nine months before Appellants moved for leave to amend; re-adding Kinder Morgan as a party after final judgment would not "promote justice"; and Appellants pointed to evidence that was already before—and considered by—the district court, relitigated earlier-made arguments, and raised arguments that could have been made before final

---

[8] In any case, in its decision denying the Crout children's claim to the accrued benefits, Kinder Morgan stated that the Oxy plan was "not merged into [and does not] have any other connection with the [Kinder Morgan] plan."  Kinder Morgan provided the same explanation when it affirmed the denial.

judgment. These reasons are sufficient to support the district court's denial.[9] *See Rosenzweig*, 332 F.3d at 865 ("We conclude the district court's stated reasons for denying plaintiffs' motion[—plaintiffs' lack of diligence and the futility of amending the complaint—]are sound and that the court did not abuse its discretion."); *see also id.* ("[A] busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.") (internal quotation marks and citation omitted); *United States ex rel. Hebert v. Dizney*, 295 F. App'x 717, 725 (5th Cir. 2008) (unpublished)[10] (affirming denial of post-judgment motion for leave to amend because proposed amendment did not "raise[] any facts which were not available previous to the district court's opinion") (quoting *Rosenzweig*, 332 F.3d at 865). Accordingly, we conclude that the district court did not abuse its discretion.

## CONCLUSION

Because Appellants' arguments fail, we AFFIRM.

---

[9] We need not address Kinder Morgan's additional argument that Appellants were judicially estopped from asserting new claims against Kinder Morgan to determine that the district court did not abuse its discretion.

[10] "Unpublished opinions issued on or after January 1, 1996, are not precedent, except [in limited circumstances such as] under the doctrine of res judicata[.]" 5TH CIR. R. 47.5.4 (asterisk omitted); *see also Light-Age, Inc. v. Ashcroft-Smith*, 922 F.3d 320, 322 n.1 (5th Cir. 2019) (concluding that, while an unpublished opinion issued after January 1, 1996, is not precedent, "we may consider [such an] opinion as persuasive authority").