**Bessie A. JAMESON, Appellant,**

v.

**Cecil W. BAIN, Appellee.**

**No. 04–83–00539–CV.**

Court of Appeals of Texas,
San Antonio.

May 22, 1985.

---

2.  *See* note 1, *supra.*

William O. Murray, Jr., San Antonio, for appellant.

Jeanne M. Redmond, San Antonio, Reese Harrison, Jr., Taylor S. Boone, Jr., San Antonio, for appellee.

Before CANTU, TIJERINA and DIAL, JJ.

OPINION

TIJERINA, Justice.

This is an appeal from a declaratory judgment that determined the character of the parties' funds, on deposit in savings accounts and trust accounts at San Antonio Saving Association, to be community property. Under the trial court's order, one-half of the balances in the accounts passed to the estate of Paul E. Jameson, Sr., deceased. Appellant, Bessie A. Jameson, the surviving wife, claims the funds as her separate property and appeals the ruling of the court.

Appellant and her husband used community property funds to open the joint tenancy accounts with rights of survivorship between husband and wife. On the first four accounts, the parties signed a partition agreement on the reverse side of the account card after they signed the joint tenancy account with rights of survivorship. These accounts are identified as follows:

1. Account Number 21–052204, opened May 5, 1971 with community funds.

2. Account number 21–901748, opened August 1, 1973 with community funds.

3. Account number 21–903485, opened January 3, 1977 with community funds.

4. Account number 21–903979, opened April 6, 1978 with community funds.

There were two other joint tenancy accounts with rights of survivorship also containing partition agreements on the reverse side of the account cards. These accounts are distinguished by their individual effective dates and the fact that appellant and her husband did not sign the partition agreement. The accounts are identified as follows:

5. Account number 17–902785, opened April 20, 1981 with community funds.

6. Account number 17–903177, opened December 16, 1981 with community funds.

Additionally, appellant and her decedent husband opened three savings accounts as revocable trust accounts with San Antonio Savings Association identified as follows:

7. Account number 17–901573, opened January 14, 1980 with community funds. The account was under the name of Paul E. Jameson, Sr., trustee, for Bessie A. Jameson.

8. Account number 21–904933, opened February 20, 1980 with community funds. The account was under the name of Paul E. Jameson, Sr., trustee, for Bessie A. Jameson.

9. Account number 21–904956, opened with community funds by appellant on March 11, 1980. This account was under the name of Bessie A. Jameson, as trustee for Paul E. Jameson.

Mr. Jameson died April 3, 1982, and appellant withdrew all the balances in the nine accounts, claiming all funds as her property. Appellees, the Independent Executor of the Estate of Paul E. Jameson, Sr., deceased, and the charitable beneficiaries under the will of decedent, claimed that one half of the balances of the accounts belonged to the estate.

■ The first assignment of error challenges the trial court's ruling which disregarded the partition agreements on the reverse side of the six (6) joint tenancy accounts with rights of survivorship. Article XVI, section 15 of the Texas Constitution specifically provides that husband and wife may by an instrument in writing partition their existing community property. TEX.FAM.CODE ANN. § 5.42 (Vernon Supp.1985) authorizes the spouses to partition all or part of their community property, and § 5.44 requires that the partition be in writing and subscribed by both parties. Thus the Texas Constitution and the Family Code require the partition agreement between spouses to be in writing. Community property must be rendered separate by statutory partition before survivorship rights arise from a joint tenancy agreement between husband and wife. *Williams v. McKnight,* 402 S.W.2d 505, 508 (Tex.1966). Section 5.42 of the Family Code, *supra,* has been interpreted as requiring a two-step procedure. First, the partition of the com-

munity property must be effected in accordance with section 5.42 of the Texas Family Code. Then, the joint tenancy agreement with right of survivorship may be entered into. *Bowman v. Simpson,* 546 S.W.2d 99, 102 (Tex.Civ.App.—Beaumont 1977, writ ref'd). In *Maples v. Nimitz,* 615 S.W.2d 690, 695 (Tex.1981), the supreme court addressed a question concerning an intended partition under TEX.REV.CIV. STAT.ANN. art. 852a, § 6.09 (Vernon 1964) (Joint Accounts by Husband and Wife-Under the Texas Savings and Loan Act), and stated:

> We conclude that mere execution of the signature agreement providing for a joint tenancy with right of survivorship as authorized by Section 6.09 does not accomplish a one-step partition of community funds....
>
> Rather, a partition of community funds must be accomplished by the spouses before creation of the joint tenancy with right of survivorship.

*Maples v. Nimitz,* 615 S.W.2d at 695; *see also McCarver v. Trumble,* 660 S.W.2d 595, 597 (Tex.App.—Corpus Christi 1983, no writ).

■■■■ It is undisputed that appellant and decedent signed the joint tenancy agreement with rights of survivorship first in accounts 1–4. Thus, the purported partition was not valid; the funds on deposit in those accounts remained community property. It is further uncontradicted that in the other two saving accounts, accounts 5 and 6, appellant and decedent signed the card creating the joint tenancy account with right of survivorship but did not sign the partition agreement. These two accounts were opened on April 20, 1981, and December 16, 1981, respectively. Article XVI, section 15 of the Texas Constitution was amended November 4, 1980; article 46(b) of the Texas Probate Code became effective September 1, 1981. Article 46(b) provides in pertinent part, viz:

> (b) A written agreement between spouses and a bank, savings and loan, credit union, or other financial institution may provide that existing funds or securities on deposit and funds and securities to be deposited in the future and interest and income thereon shall by that agreement be partitioned into separate property and may further provide that the property partitioned by that agreement be held in joint tenancies and pass by right of survivorship.

We do not accept the contention that the constitutional amendment and article 46(b) abrogated the requirement that a valid partition of community property must be executed and subscribed separately and prior in time to the execution of the joint tenancy with rights of survivorship. In any event, the question appears to be moot since all parties acknowledged that appellant and decedent did not sign the partition agreement. TEX.FAM.CODE arts. 5.42 and 5.44, which became effective September 1, 1981, both require that the partition agreement be in writing and subscribed by all parties. Accordingly, the funds on deposit on these two accounts remained community property. Point of error one is overruled.

Secondly, appellant complains that the trial court erroneously concluded that the three trust accounts constituted community property. Account number 17–901753 was opened with community funds on January 14, 1980; account number 21–904933 was opened with community funds on February 27, 1980. Both accounts were in the name of Paul E. Jameson, Sr., trustee for Mrs. Bessie A. Jameson. It is acknowledged by the parties that partition agreements were not executed, but the savings contracts for the two accounts indicated that the accounts were subject to revocable trust agreements. The reverse side of both account contracts read as follows:

> Trustee Accounts (Revocable)—These accounts are held by the trustee named in this Savings Contract for the benefit of one or more of the named beneficiaries and such accounts are subject to the Revocable Trust Agreement which is attached hereto and made a part hereof for all purposes. (Exhibit E, S.F. 18).

Decedent renewed the savings contracts but did not sign new discretionary revoca-

ble trust agreements. The third trust account, numbered 21–904956, was opened with community funds on March 11, 1980, under the name of Mrs. Bessie A. Jameson, trustee for Mr. Paul E. Jameson. She executed a revocable trust agreement similar to those signed by Mr. Jameson. Both trustees retained control over the deposits with the power to revoke or to make withdrawals. We will first address the ownership of the funds held by decedent in trust for appellant.

Appellee argues that discretionary revocable trust agreements are governed by the Texas Trust Act, ch. 148, § 7. 1948 Tex.Gen.Laws 232, *repealed by* Act of June 19, 1983, ch. 576, § 6 Tex.Sess.Law Serv. 3729–30, and not by Chapter XI of the Texas Probate Code. Section 436(14) of the Texas Probate Code provides:

'Trust Account' means an account in the name of one or more parties as trustee for one or more beneficiaries where the relationship is established by the form of the account and the deposit agreement with the financial institution and *there is no subject of the trust other than the sums on deposit in the account.* It is not essential that payment to the beneficiary be mentioned in the deposit agreement. *A trust account does not include a regular trust account under a testamentary trust or a trust agreement* which has significance apart from the account.... (Emphasis added.)

Section 439(c) of the Texas Probate Code provides that if the account is a trust account, on the death of the trustee the deposits belong to the beneficiary. In this case, the only subject of the trust was the community funds deposited with San Antonio Savings Association. However, the deposit agreements gave reference to revocable trust agreements and we will address them as such.

■ An express trust arises by an expressed agreement or by the direct and positive acts of the parties in writing. *Hereford Land Co. v. Globe Industries, Inc.,* 387 S.W.2d 771, 775 (Tex.Civ.App.—Tyler 1965, writ ref'd n.r.e.). A trust is a

method used to dispose of property; the trustee is vested with the legal title and the right of possession of the trust property, but holds it for the benefit of the beneficiary. The beneficiary is vested with the equitable title to the trust property. *City of Mesquite v. Malouf,* 553 S.W.2d 639, 644 (Tex.Civ.App.—Texarkana 1977, writ ref'd n.r.e.); *Becknal v. Atwood,* 518 S.W.2d 593, 598 (Tex.Civ.App.—Amarillo 1975, no writ). Where the intent of trustor is to vest the beneficiary with the deposits on the trust account, the trust will not be invalidated because: (1) there was no consideration; (2) the trustor as trustee retained control and the right to make withdrawals; or (3) the trustor retained the power to revoke. *Westerfeld v. Huckaby,* 474 S.W.2d 189, 192 (Tex.1971); *City of Mesquite v. Malouf, supra.* We interpret the intent of the trustor under Texas Trust Act, ch. 148, § 7, 1948 Tex.Gen.Laws 232, *repealed by* Act of June 19, 1983, ch. 576, § 6 Tex.Sess.Law Serv. 3729–30, which provided that a trust could be created by "[a] declaration in writing by the owner of the property that he holds it as trustee for another person or persons or for himself and another person or persons." In *Citizens National Bank v. Allen,* 575 S.W.2d 654, 658 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.), the court held: "[W]hen a valid intervivos revocable trust was not revoked during the life of the trustor, it becomes irrevocable upon his death, and there being no other unfulfilled purposes of the trust expressed, the trust terminates and is enforceable by the beneficiary."

■ In *Citizens National Bank v. Allen, supra,* the court indicated that the mere fact that a deposit is made in the name of a depositor as trustee for another is not conclusive that any trust is created; "the ultimate controlling fact is the intention of the donor." In this case, the intent of the parties in executing the trust agreements is unequivocal. Decedent signed two savings contracts and marked the blocks designating the accounts as a revocable trust accounts; he was the trustee for the benefit of his wife. Decedent re-

tained control over the individual trust accounts with the power to make withdrawals from the trust res and to revoke the trust. The trust agreements specifically provided that the accounts were held by the trustee for the benefit of the named beneficiary.

 Lastly, the trial court's conclusion of law that decedent revoked the trust agreement at the time he executed his will is not supported by statutory provision, case law or the record evidence. This is unlike *Sanderson v. Aubrey*, 472 S.W.2d 286 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.), where the settlor in her will revoked an inter vivos trust previously executed for the benefit of her grandson, saying: "This instrument is specifically included in the revocation clause *and the same is now formally revoked* because the beneficiary of said instrument ... has been a bitter disappointment to me." (emphasis added). The court stated: "Any definitive manifestation by the settlor of his intention that the trust should be forthwith revoked is sufficient.... It is not necessary, however, that the communication should be received by the trustee." In the instant case decedent's will does not contain a definitive manifestation to revoke the inter vivos trust for the benefit of his wife. Appellees, the charitable beneficiaries, were each bequeathed a fraction of the residue of decedent's estate. Therefore, the trusts became irrevocable on the date that Mr. Jameson, the trustee, died. The two trusts terminated and the funds in those accounts vested in appellant, the beneficiary, as a matter of law. The second point of error is sustained in part.

 The ownership of the community funds held by appellant in trust for decedent has a different resolution. The trust corpus did not vest in appellant on the death of decedent; instead, the trust terminated for want of a beneficiary. The community nature of the funds is unchanged; the balance in the account must be divided equally between decedent's estate and appellant. The second point of error is over-ruled as to the funds held by appellant in trust for decedent.

The judgment is affirmed in part and reversed and rendered in part.