Billy L. ALLARD, Appellant,

v.

Martha Parten FRECH, Independent Executrix of the Estate of Billie J. Allard, Deceased, Appellee.

No. 2–86–074–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 5, 1987.

Rehearing Denied Sept. 9, 1987.

Kerry, Harrison, Brown, Lewis, Steck & Forderhase and Henry E. Kerry, Fort Worth, for appellant.

Lively & Kasselman and John R. Lively, Fort Worth, for appellee.

Before JOE SPURLOCK, II, FARRIS and KELTNER, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

Appellant, Billy L. Allard, appeals from two orders issued in connection with the probate of the estate of his deceased wife Billie J. Allard. An approval order was entered by the court after a trial on the inventory, appraisal and list of claims filed by Martha Parten Frech, executrix. A second order was later issued to compel compliance with the approval order.

We affirm in part and reverse and remand in part.

Billie J. Allard and Billy L. Allard were married in 1945. During their marriage, Mr. Allard began working for General Dynamics Corp., retiring in May, 1982. Mrs. Allard died on April 11, 1983, after a long bout with cancer. The couple was married until Mrs. Allard's death. Martha Parten Frech, Mrs. Allard's sister, offered a will dated January 12, 1983 into probate. Allard contested the will and offered a later will, dated March 22, 1983. The later will was rejected by the court. When the will offered by Mrs. Frech was admitted to probate, as independent executrix she filed an "Inventory, Appraisement, and List of Claims" to which Allard objected. At trial, the issues were limited by agreement to those concerning the characterization of certain property. The court approved the inventory, signed the approval order, and later entered the second order to compel delivery of property in compliance with the approval order. Points of error one through thirteen challenge the approval order. Points of error fourteen through sixteen challenge the second order.

In point of error one, Allard contends the court erred in finding that his General Dynamics retirement plan was community property, one-half of which the court included in Mrs. Allard's estate. The retirement plan had a value of $102,080.00 and vested in 1982. As a result of the community characterization, Mrs. Allard's one-half of the retirement plan passes to two trusts set up in favor of the Allards' daughter and grandchildren. Allard claims these beneficiaries were never intended to be protected by or share in his retirement plan because

they are able-bodied young adults capable of supporting themselves. We are in sympathy with the position taken by appellant and agree that adult children should not share in the retirement of a parent. Nevertheless, we must reject this argument.

In support of his argument, Allard asks this court to apply the result of *Valdez v. Ramirez*, 574 S.W.2d 748 (Tex.1978) to this case, or to adopt for Texas a probate rule called the terminable interest rule. In *Valdez* the Court held the employee-wife's retirement benefits remaining after her husband's death were her separate property because as a federal government employee, her retirement was provided by the Civil Service Retirement Act, 5 U.S.C. sec. 8331 (Supp. VIII 1987), et seq., which pre-empts conflicting state marital property rules. *Valdez*, 574 S.W.2d at 751; *see also Ex parte Burson*, 615 S.W.2d 192, 193–94 (Tex.1981).

The terminable interest rule answers the question of whether or not to disburse retirement benefits to heirs of the deceased spouse by terminating the non-employee spouse's interest in a pension at the death of either spouse. *Waite v. Waite*, 6 Cal.3d 461, 99 Cal.Rptr. 325, 492 P.2d 13 (1972); *Matter of Estate of Allen*, 108 Cal.App.3d 614, 166 Cal.Rptr. 653 (Court of Appeals [1st Dist.] 1980). Both of these rules offer an equitable solution to the dilemma of whether or not to pay one-half of a person's retirement to devisees or heirs of the deceased spouse's interest in the community estate. These persons otherwise would not, and should not, have an interest in a survivor's hard earned and needed retirement benefits. In this connection, we are not speaking of a plan which provides some sort of specific death benefit, but rather the type which when put into effect, was contemplated to provide minimum subsistence for the retired employee or spouse for the remainder of their natural lives, or a stated period of time.

Allard acknowledges that a spouse has a community property interest (while alive) in that portion of the retirement benefits of

the earning spouse accruing during their marriage. He argues that certain comments by our Supreme Court in *Valdez*, 574 S.W.2d at 748 coupled with legitimate public policy considerations, dictate that Texas should adopt the terminable interest rule. That rule asserts the non-employee spouse's pension interest terminates at the death of either spouse, hence, is not subject to testamentary disposition. *See Waite*, 6 Cal.3d 461, 99 Cal.Rptr. 325, 492 P.2d 13. In essence Allard is arguing that while the community property interest may be determined and divided upon dissolution of the marriage while both spouses are alive, dissolution by death should effect another result.

In *Valdez*, a United States Civil Service employee had been receiving retirement benefits for two years when her husband died intestate. He had been married to the retired employee for 340 months of the 352 months of her employment. The issue was whether the deceased husband's interest in his wife's civil service retirement benefits was inheritable by his adult children of a former wife.

The Supreme Court held that the retired employee succeeded to the survivor portion of the annuity benefit, consequently none of the benefit could pass by the intestacy of her husband. The decision was *not* based upon Texas law but upon the requirements of the federal Civil Service Act, which provides only for payment to the employee, or in the case of the employee's death, to the surviving spouse and to the employee's minor, incapacitated or student children. The Court found that "[I]t would be contrary to the whole contract, policy, and plan of the Retirement Act for nearly one-half of Mrs. Valdez's monthly payments to be taken from her and awarded to her deceased husband's adult children." *Valdez*, 574 S.W.2d at 750. Allard argues the same equitable result should obtain here.

The *Valdez* court noted that a recognized non-probate asset, not subject to disposition by will or intestate distribution, is property passing by right of joint survivorship. *Id.* at 750. Allard argues this also is authority

for his position as his retirement is a non-probate asset. However, in *Valdez*, the court pointed out that the employee had exercised the joint and survivorship option provided by her retirement plan. Although this option provided a lower monthly payment to her and her husband while both were living, and a lower payment to her if she survived him, it also created in the husband *a right to an annuity if he survived her. Id.* at 751. The annuity, being a valid joint survivorship community asset, was therefore a *non-probate asset to which either was entitled to full enjoyment upon the death of the other. Id.*

■ In the retirement plan before us there is a joint survivor option but that option was not exercised by Allard, whose plan is to pay benefits during his entire lifetime with ten years of benefits guaranteed to him or someone else. Consequently, the holding and result in *Valdez* may be distinguished here.

Another reason to distinguish the instant case from *Valdez* is the source of the retirement plan. On motion for rehearing in *Valdez* the Court very carefully noted that "we are dealing here with a type of joint and survivorship annuity which was created by federal law." *Id.* at 753. The Court further specifically held: "[A] joint survivorship annuity clearly authorized by federal law to serve a federal purpose may preempt conflicting state laws in the absence of its use to perpetuate a fraud by one spouse on the other." *Id.*

What is most troublesome is that, having noted on p. 750 that property passing at death pursuant to terms of a contract, such as provided in life insurance policies and *under contributory retirement plans* is one of "four categories of assets known as non-probate assets, not subject to disposition by will and not subject to the rules of intestate distribution," Justice Daniel, writing for the Court, *did not* use this as a basis for the decision in *Valdez*, and never otherwise remarked on this rule in the opinion. This rule *was not* the basis for the holding in *Valdez*. Specifically, on rehearing, Justice Daniel seemed to be making very clear that except for the fact that the

*Valdez* retirement was federal, there might be "conflicting state laws" governing the disposition of a joint (community) interest in retirement. Therefore, we do not find *Valdez* to be authority in this case to hold the community interest of Mrs. Allard terminated on her death, as was the result reached in *Valdez.*

The Supreme Court had a clear opportunity in *Valdez* to adopt the terminable interest rule, or use an exclusionary rule of defining the entire retirement interest as a non-probate asset, but *did not do so.* The Court very carefully based the entire decision on federal law. The footnote cases by Justice Daniel used as authority in discussing the non-probate category of assets do not support Allard's position either. *Id.* at 750 n. 3.

It would be interesting to know what arguments or discussions occurred in the Supreme Court while the motion for rehearing was pending in *Valdez,* but all we do know is that, having mentioned contributory-retirement at one place as a *non-probate* (excluded) asset in the main body of the opinion, the court never again discussed this characteristic of the property. Obviously if the Supreme Court were to adopt either an exclusionary rule or terminable interest rule for non-federal retirement plans, many other facets of the law governing the descent and distribution of community property would have to be taken into account. Nor may this intermediate appellate court engraft the "terminable interest" rule upon Texas law. That matter is one for the legislature or the Supreme Court. We are impressed by the reasoning of the Washington Supreme Court in declining to adopt the rule in *Farver v. Dept. of Retirement Systems,* 97 Wash.2d 344, 644 P.2d 1149, 1151–52 (1982) (en banc). We find the trial court did not err in determining the retirement pay was community property. We overrule point of error number one.

The second and third points of error challenge the legal and factual sufficiency of the evidence to support the court's finding that one-half of the sums on deposit in a bank account having a notation of a joint tenancy with right of survivorship was the property of the estate. In its findings of fact, the court determined that the bank account was subject to a written agreement, but the agreement did not effect a partition. The court further concluded that the bank account was not subject to any partition agreement or spousal gift, and was not a valid joint account with right of survivorship. The trial court refused to find that the parties intended the account to be a joint tenancy with right of survivorship. It is undisputed that the bank account was funded with community property.

Allard contends the bank account was a joint tenancy with- right of survivorship authorized by the Texas Constitution and the Texas Probate Code. Since 1948, the Texas Constitution has permitted spouses to partition existing community property. In 1980 the Constitution was amended to allow spouses to partition property not yet acquired:

> [P]rovided that persons about to marry and spouses, without the intention to defraud pre-existing creditors, may by written instrument from time to time partition between themselves all or part of their property, then existing or to be acquired, or exchange between themselves the community interest of one spouse or future spouse in any property for the community interest of the other spouse or future spouse in other community property then existing or to be acquired, whereupon the portion or interest set aside to each spouse shall be and constitute a part of the separate property and estate of such spouse or future spouse.

TEX. CONST. art. XVI sec. 15.

Implementing legislation to this portion of the Constitution is found in both the family and the probate codes. The Family Code defines the formalities of a partition agreement: "each agreement, partition, or exchange agreement made under this subchapter must be in writing and subscribed by all parties." TEX.FAM.CODE ANN. sub. 5 sec. 44 (Vernon Supp.1987). The Probate Code abolishes joint tenancies yet

purports to allow spouses to create a joint tenancy with the right of survivorship in bank accounts:

46 Joint Tenancies Abolished

(a) Where two (2) or more persons hold an estate, real, personal, or mixed, jointly, and one (1) joint owner dies before severance, his interest in said joint estate shall not survive to the remaining joint owner or joint owners, but shall descend to, and be vested in, the heirs or legal representatives of such deceased joint owner in the same manner as if his interest had been severed and ascertained. Provided, however, that by an agreement in writing of joint owners of property the interest of any joint owner who dies may be made to survive to the surviving joint owner or joint owners, *but no such agreement shall be inferred from the mere fact that the property is held in joint ownership.*

(b) A *written agreement between spouses and a bank,* savings and loan, credit union, or other financial institution may provide that existing funds or securities on deposit and funds and securities to be deposited in the future and interest and income thereon *shall by that agreement be partitioned into separate property* and *may further provide* that the *property partitioned by that agreement be held in joint tenancies and pass by right of survivorship.*

TEX.PROB.CODE ANN. sec. 46 (Vernon Supp.1987). (Emphasis added.)

■ Relying on section 46(b) of the Probate Code, Allard takes the position that the survivorship language on the signature card manifests a clear intention to partition the property, *even though there is no partition language on the signature card.* In holding this view, Allard defies a firmly rooted principle of community property law in Texas which requires *the actual partition* of community property before a valid joint tenancy with the right of survivorship can be created. *See Maples v. Nimitz,* 615 S.W.2d 690, 695 (Tex.1981); *Williams v. McKnight,* 402 S.W.2d 505, 507 (Tex.1966); *Hilley v. Hilley,* 161 Tex. 569, 342 S.W.2d 565, 569 (1961).

Although *Maples v. Nimitz* was decided prior to the 1980 Constitutional Amendment, and did not involve section 46(b) of the Probate Code, we believe the holding of that case is dispositive of this appeal. In *Maples* the issue before the Supreme Court of Texas was whether the bank signature card signed by Mr. and Mrs. Maples purporting to create a joint tenancy with right of survivorship constituted a partition of the community funds. *Id.* 615 S.W.2d at 693–94. The statute which authorized such an account concerned savings and loan associations and was framed in terms of partition:

Joint accounts by husband and wife

Sec. 6.09. A husband and wife shall have full power to enter into a savings contract involving a savings account consisting of funds which are community property of their marriage so as to create a joint tenancy with right of survivorship as to such account and any future additions or dividends made or credited thereto and, to the extent necessary to accomplish such result in law, *such contract shall constitute a partition of such community property* or reciprocal gifts from the respective spouses, if the same is in writing and subscribed to by such husband and wife even though not acknowledged by either of them.

TEX.REV.CIV.STAT.ANN. art. 852a sec., 6.09 (Vernon 1964). (Emphasis added.)

The Supreme Court of Texas nevertheless held the savings contract language to be ineffective and a fictional partition. The Supreme Court noted that the mere execution of the signature agreement providing for a joint tenancy with right of survivorship *did not effect* a one-step partition of community funds sufficient to meet the requirements of the Constitution:

[A] partition of community funds must be accomplished by the spouses before creation of the joint tenancy with right of survivorship.

*Maples,* 615 S.W.2d at 695.

We likewise find the partition to be fictional in this case. The agreement executed by Mr. and Mrs. Allard *makes no*

*reference to a partition* of community funds, and the record contains *no partition agreement independent* of the signature card. We further find that a partition was not implicit in the agreement merely because the language of 46(b) may allow the partition of community funds and creation of a joint tenancy with the right of survivorship in one transaction. *See Id; Williams v. McKnight*, 402 S.W.2d at 508. *Cf. Jameson v. Bain*, 693 S.W.2d 676, 679 (Tex.App.—San Antonio 1985, no writ) (partition not effected when testimony showed the joint tenancy agreement was signed before the partition agreement was signed.)

■ A similar partition by implication argument was rejected by the Corpus Christi Court of Appeals in *Bradley v. Bradley*, 725 S.W.2d 503, 504 (Tex.App.—Corpus Christi 1987, no writ). In that case, the parties signed a prenuptial agreement expressing their intent to preserve the separate property character of the personal efforts, including income. However, the parties failed to execute annual partition agreements. The court held "the prenuptial agreement itself does not operate to partition and exchange the community property interests.... it merely contemplates a partition and exchange of community property interests in the future." *Id.* We hold that a partition of community funds in Texas is not implicit in the mere execution of a joint tenancy with right of survivorship agreement, and that actual partition of community funds must be accomplished in an *active* not passive manner. The court did not err in determining the funds in the account were community property, with no right of survivorship in Mr. Allard. Points of error two and three are overruled.

■ In points of error four through thirteen, Allard challenges the legal and factual sufficiency of the evidence to support the trial court's findings and conclusions of the separate property character of certain funds in accounts. Under the facts of this case, Mrs. Frech carried the burden of persuading the trial court that the character of the property of the decedent's estate was accurately reflected in the "Inventory, Appraisement and List of Claims." *See Wohlenberg v. Wohlenberg*, 485 S.W.2d 342, 348 (Tex.Civ.App.—El Paso 1972, no writ). Although the inventory is not conclusive of the title to the property therein listed, it is prima facie evidence of that fact. *Krueger v. Williams*, 163 Tex. 545, 359 S.W.2d 48, 50 (1962); *Balaban v. Balaban*, 712 S.W.2d 775, 779 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Adams v. Sadler*, 696 S.W.2d 690, 692 (Tex.App.—Austin, 1985, writ ref'd n.r.e.).

Among the items listed on the inventory as the decedent's separate property were a municipal securities trust 082–032282 series 006 valued at $10,000, and bank accounts at Tarrant Savings Association valued at $11,918.22. Listed as a community asset was a Gibralter Savings Account valued at $10,000. The trial court found all three assets to be the separate property of the estate.

■ At this juncture we note that part of this appeal seems to stem from discrepancies between the labels given to the assets on the inventory, on the exhibits tracing the assets, and in the court's final order. However, after careful review of the record, we believe these discrepancies do not hinder our ability to accurately respond to the points of error. The inventory listed "Tarrant Savings, $11,918" as separate property of the estate. The court found "[t]he principal balance on deposit in Tarrant Savings account number #7–12169701 in the sum of $11,918.22 were funds given to the Deceased by her mother." It appears that part of Allard's complaint is that Mrs. Frech did not adequately trace the source of funds underlying the balance of $11,918.22. We disagree.

Mrs. Frech testified the $11,918.22 was an amalgamation of three different certificates of deposits which were gifts to the decedent from her mother. No evidence shows an account numbered 7–12169701. However one of the three accounts making up the $11,918.22 was numbered 12–16970–1. Each of the three different accounts was represented by an exhibit, detailing the history of the account, and was includ-

ed on a summary of the decedent's property obtained by gift or devise from her mother. All of these exhibits were admitted into evidence. One of the exhibits showed a bank account with a number 12–16970–1. Mrs. Frech testified that their mother was very meticulous about making sure both daughters received the same amount of money in terms of gifts, and any time she made a gift to one daughter, she made a gift of equal value to the other. Mrs. Frech also testified their mother, prior to her death, made some monetary gifts to Mrs. Frech and the decedent. Among these gifts were three certificates of deposits in amounts approximating $8,043, $2,049 and $1,400. No evidence was presented at trial to suggest the accounts were comingled with community funds, so as to destroy their separate character. The total of these deposits is $11,492.

Although Allard testified that only *one* of the accounts was a gift to the decedent from her mother, he also testified that the transactions with respect to the other two accounts were accurately recorded in the exhibits produced by Mrs. Frech's attorney. He testified his name appeared at one time on the accounts as a co-owner, but at trial, the accounts did not carry that notice. Allard could not say what happened to the accounts. We find the evidence produced by Mrs. Frech was both legally and factually sufficient to support the court's finding that the balance of the Tarrant Savings accounts were the separate property of the estate (being an amalgamation of the three different deposits), regardless of the conflict between the inventory, the evidence, and the language of the court's finding.

Allard also challenges the court's findings that municipal securities trust number 082–032282 certificate was purchased with proceeds from the sale of a farm inherited by the deceased from her mother. This item was listed on the inventory as decedent's separate property with a value of $10,000. There is no indication that Mrs. Frech or anyone else was attempting to show the gift was from the sale of a farm, notwithstanding the court's finding to the contrary. The evidence Mrs. Frech produced adequately traces the securities to a gift from the decedent's mother. The record is clear, that another, second group of securities was purchased with proceeds inherited by the decedent from the sale of her mother's farm. That finding is not challenged on appeal.

Mr. Allard nevertheless testified that the securities in certificate # 082–032282 were purchased from other, different C.D.'s. Mrs. Frech's exhibits to support the separate character of the securities show that a C.D. owned by the decedent's mother was divided equally in 1974 between her two daughters, giving them $10,000 each. The decedent had opened a C.D. naming her own daughter as survivor. Eventually that C.D. was closed and the principal deposited into a checking account at Central Bank and Trust. A check for $10,128.90 was written on the Central account to Rotan Mosle for the purchase of the securities. We find the evidence presented by Mrs. Frech is both legally and factually sufficient to support the court's finding that the certificate was separate property. The language in the court's finding that the securities were bought from the proceeds of the sale of the decedent's mother's farm does not abrogate the finding. Points of error four, five, six, seven, twelve and thirteen are therefore overruled.

■ Finally, Allard challenges the court's finding that $10,000 on deposit in a Gibralter Savings account was the separate property of the decedent. Mrs. Frech listed this account as community property in the inventory, and did not attempt to characterize it otherwise at trial. Allard objected that the account did not exist, and in the alternative that the $10,000 was combined with other funds to form the Gibralter Savings account discussed in points of error two and three. There is no evidence to support the court's finding that the account was the decedent's separate property. The trial court should have either found that the account did not exist, or that it was the community property of both parties. The trial court committed error in finding the funds were separate property of the decedent. Points of error eight through eleven are sustained.

In his final points of error, Allard challenges the second order entered by the trial court. After the court's order determining ownership of the various assets, Allard refused to deliver certain separate property of the estate to Mrs. Frech. Mrs. Frech filed a "Motion to Compel Delivery of Property" and, after hearing, the court entered an order requiring Allard to deliver to the court ten specifically described rings and other pieces of jewelry together with the following:

2. The sum of Sixty One Thousand and no/100 Dollars ($61,000.00) in cash or cashiers check payable to MARTHA FRECH, Independent Executor of the Estate of BILLIE J. ALLARD; and

3. One-half (½) of the proceeds received by Contestant from General Dynamics retirement from May 1, 1983 to April 1, 1986 (35 months × $1,007.63 × ½ = $17,633.53) and one-half (½) of the proceeds to be received by Contestant and from General Dynamics Retirement from April 1, 1986 to November 1, 1987 (20 months × $1,007.63 = ½ = $10.076.30) for a total sum of Twenty-Seven Thousand Seven Hundred Nine and 83/100 Dollars ($27,709.83) in cash or cashiers check payable to MARTHA FRECH, Independent Executor of the Estate of BILLIE J. ALLARD.

The jewelry was to be deposited in a safe deposit box and the money was to be deposited in an interest bearing account, all subject to freeze agreements subject to further court order.

■ Allard contends in point of error fourteen that the second order was a "turnover order" erroneously granted because no attempt was made to obtain the property by formal writ of execution, as required by the Turnover Statute, TEX.CIV.PRAC. & REM.CODE sec. 31.002 (Vernon 1986). Mrs. Frech contends, and we agree, that the order is not a turnover order but is instead an exercise of the court's authority to enforce its orders to insure preservation of the property, even cash. *See* TEX.R. CIV.P. 308.

The purpose of a turnover order is to aid a diligent judgment creditor in satisfying a judgment in a timely manner. *Schliemann v. Garcia*, 685 S.W.2d 690, 692 (Tex. App.—San Antonio 1984, no writ); Hittner, *Texas Post—Judgment Turnover and Receivership Statutes*, 45 Tex.B.J. 417 (1982). The statute is clearly for the benefit of judgment creditors. *See Schliemann*, 685 S.W.2d at 692. We do not need to decide in this case whether it should or could be extended to probate matters.

■ Additionally, in points of error fifteen and sixteen, Allard complains of that portion of the second order compelling him to pay $88,709.83 in cash by two checks representing funds due the estate which the court found were in Allard's possession or at one time under his control. Sixty-one thousand dollars represented funds from a source which cannot be determined from the order alone. The remaining amount was made up of $17,633.53 due to the estate from one-half of the retirement paid and $10,076.30 to be paid in the future to Allard. Allard complains, without citing authority, that the court exceeded its authority to order cash paid over without describing the specific bank account chargeable, or without other specific rule or statutory authority. We disagree. It is sufficient that the court had found funds due the estate, and that the evidence shows they were at one time under Allard's control.

■ We hold the court has inherent power to enforce its judgments, without resort to the Turnover Statute. *Reynolds v. Harrison*, 635 S.W.2d 845, 846 (Tex.App. —Tyler 1982, writ ref'd n.r.e.). *See Various Opportunities v. Sullivan Investments, Inc.*, 677 S.W.2d 115, 118 (Tex.App. —Dallas 1984, no writ). However, so much of the order as required Allard to pay a lump sum certain before it was due was excessive. The court may order Allard to pay such sums if, as and when they become due. Without joinder of the manager of the retirement fund, Allard remains at best a constructive trustee of the funds owing to the heirs. Points of error fourteen, fifteen and sixteen are therefore overruled.

This cause is reversed and remanded for the trial court to make disposition of the funds we have found to be mischaracterized, and for adjustment as otherwise needed in its orders. The costs are assessed against appellant.