**Billy L. ALLARD, Petitioner,**

v.

**Martha Parten FRECH, Independent Executrix of the Estate of Billie J. Allard, Deceased, Respondent.**

**No. C–6863.**

Supreme Court of Texas.

May 4, 1988.

Rehearing Denied July 6, 1988.

---

2. Cabot's no evidence argument as to this issue    is unconvincing.

Henry E. Kerry and Charles B. Lewis, Kerry, Harrison, Brown, Lewis, Steck & Forderhase, Fort Worth, for petitioner.

John R. Lively, Law Office of John R. Lively, Fort Worth, for respondent.

MAUZY, Justice.

This case involves the proper characterization of retirement benefits and joint savings account proceeds in a probate action. The trial court rendered judgment characterizing the husband's retirement benefits and joint savings account proceeds as community property and awarded the wife's estate one-half of the husband's retirement benefits and one-half of the proceeds in the joint savings account. The court of appeals affirmed these findings of the trial court holding that the proceeds from the husband's retirement plan were properly characterized as community property and

that the funds held in the joint savings account were not held in joint tenancy with right of survivorship. 735 S.W.2d 311. We affirm.

Billie J. Allard and Billy L. Allard were married from 1945 until Mrs. Allard's death on April 11, 1983. Shortly after the marriage, Mr. Allard began working for General Dynamics Corporation and retired from his position in May, 1982. As a result of his employment, Mr. Allard subscribed and contributed community funds to a qualified private retirement plan. Under the terms of the options available to him at the time of his retirement, Mr. Allard selected an option providing for lifetime benefits with a guaranteed ten-year minimum, but such election was not signed by Mrs. Allard. Mr. Allard began receiving retirement benefits of $1,008.00 per month beginning June, 1982, and has received monthly benefits since that time.

On April 25, 1983, Martha Parten Frech, Mrs. Allard's sister, offered a will dated January 12, 1983 into probate. Mr. Allard contested the will and offered a later will dated March 22, 1983, which was rejected by the court. After the will offered by Mrs. Frech was admitted to probate, as independent executrix, she filed an "Inventory, Appraisement, and List of Claims" to which Mr. Allard objected. The issues presented during trial were limited by agreement of the parties to those concerning the value and characterization of certain property. After a trial on the merits, the trial court approved the inventory and signed the approval order awarding the decedent's estate one-half of the husband's retirement benefits, as well as one-half of the sums on deposit in a joint savings account containing a survivorship provision. The trial court made additional findings which are not challenged by the parties and thus not before this court.

The court of appeals affirmed the judgment of the trial court regarding the husband's retirement benefits and the proceeds in the joint savings account. The court of appeals held that the benefits from the husband's retirement plan were properly characterized by the trial court as community property, thus, Mrs. Allard's half-interest in the retirement benefits properly passed under her will to the Allards' daughter and grandchildren. The court of appeals further held that a partition of community funds in Texas is not implicit in the mere execution of a joint tenancy with right of survivorship agreement, and that actual partition of community funds must be accomplished in an active not passive manner. Therefore, in light of the absence of a partition agreement or spousal gift, the court of appeals concluded that the funds in the joint savings account were community property, with no right of survivorship in Mr. Allard. 735 S.W.2d at 317.

The initial question presented for this court's consideration involves the proper method to be utilized in dealing with retirement benefits in instances where the marriage is terminated by the death of the non-employee spouse. In this case, Mr. Allard possessed a retirement plan with General Dynamics in the amount of $102,080.00 which vested in 1982 prior to the death of his wife. Mr. Allard contends that his wife's one-half interest in his retirement benefits should not be allowed to continue after her death and pass under her will to the Allards' adult child and grandchildren. Focusing his argument in part on the inequities involved in allowing "able-bodied young adults capable of supporting themselves" to share in his retirement benefits, Mr. Allard urges this court to apply the result of *Valdez v. Ramirez*, 574 S.W.2d 748 (Tex.1978) to this case, or alternatively, to adopt the terminable interest rule. We decline to extend the holding in *Valdez* to the facts in this case. Likewise, we reject Mr. Allard's contention that the terminable interest rule should be adopted and applied in this case.

In *Valdez*, a United States Civil Service employee had been receiving retirement benefits under the Federal Civil Service Retirement Act for two years when her husband died intestate. In response to the issue of whether the deceased husband's interest in his wife's civil service retirement benefits was inheritable by his adult children of a former wife, we concluded that the wife's retirement benefits remain-

ing after her husband's death were her separate property; consequently, the benefits could not pass by the intestacy of her husband. *Valdez,* 574 S.W.2d at 751. This decision was primarily based on the preemption of Texas community property law by the requirements of the Federal Civil Service Act which provided for the payment of retirement benefits only to the employee, or in the case of the employee's death, to the surviving spouse and the employee's minor, incapacitated or student children. We held that it would be contrary to the entire contract, policy, and plan of the Federal Retirement Act for nearly one-half of Mrs. Valdez's monthly payments to be taken from her and awarded to her deceased husband's adult children. *Valdez,* 574 S.W.2d at 750. Mr. Allard argues that the same equitable result should be reached in this case.

We hold that the court of appeals correctly distinguished *Valdez* from the instant case. *Valdez* involved a federal retirement plan pursuant to a federal statutory scheme in which the employee-spouse exercised the joint and survivorship option provided by her retirement plan. Contrastingly, the instant case is distinguishable in that it involves a private retirement plan in which Mr. Allard selected an option, which was not signed by the deceased, guaranteeing him retirement benefits for ten years. The retirement plan in this case contained a joint and survivorship option which Mr. Allard declined to exercise. Consequently, the holding and result in *Valdez* is distinguishable here.

■■■ In further support of his position, Mr. Allard argues that according to *Valdez,* retirement benefits are non-probate assets, thus not subject to disposition by will and not subject to the rules of intestate distribution. *Valdez,* 574 S.W.2d at 750. However, it is important to note that while Texas law recognizes provisions in pension plans as being nontestamentary in nature, section 450(a)(1) and (3) of the Texas Probate Code permit benefits under pension plans to "pass to a person designated by the decedent." Therefore, since there is no indication that the decedent, Mrs. Allard,

agreed to the disposition of the retirement benefits, there appears to be no valid reason to deny Mrs. Allard the opportunity to dispose of her community interest in the retirement plan. Thus, we hold that in light of the settled marital property rule in Texas that a spouse has a community property interest in that portion of the retirement benefits of the opposite spouse earned during their marriage, the retirement benefits in this case were properly characterized as community property, and thus, one-half of such benefits was properly included in the wife's estate. *See Taggart v. Taggart,* 552 S.W.2d 422 (Tex.1977); *Cearley v. Cearley,* 544 S.W.2d 661 (Tex. 1976); *Busby v. Busby,* 457 S.W.2d 551 (Tex.1970).

■■■ Additionally, Mr. Allard urges this court to adopt the terminable interest rule which provides that the non-employee spouse's pension interest terminates at the death of either spouse. *See Matter of Estate of Allen,* 108 Cal.App.3d 614, 166 Cal. Rptr. 653 (Court of Appeals [1st Dist.] 1980); *Waite v. Waite,* 6 Cal.3d 461, 99 Cal.Rptr. 325, 492 P.2d 13 (1972); *Benson v. City of Los Angeles,* 60 Cal.2d 355, 33 Cal.Rptr. 257, 384 P.2d 649 (1963). In spite of the application of the rule by the California courts in these three cases, it has been widely viewed in California as creating an unfair deprivation and misallocation of the non-employee spouse's full share of pension benefits representing community property accrued and accumulated during the marriage to the employee spouse. *See Taylor v. Taylor,* 189 Cal.App.3d 435, 234 Cal.Rptr. 486 (Cal.Ct.App.1987). California's struggle with the terminable interest rule culminated in 1986 with an amendment to the California Family Law Act specifically requiring the court to assure that each party receives a full community property share of the retirement plan. Cal.Civ.Code Ann. § 4800.8 (West.Supp.1987). This legislation was intended to abolish the terminable interest rule and has since been held to be retroactive. *Taylor,* 234 Cal.Rptr. at 491. We find no reason in this case to set aside the basic principles of community property law, which when applied in this case, entitled the non-employee spouse to

her share of the retirement benefits. In regard to Mr. Allard's request that this court adopt the terminable interest rule, we decline to do so and conclude that such matter is better left to the legislature.

■ The second point raised by Mr. Allard challenges the court of appeals' finding that one-half of the sums on deposit in a joint savings account having a notation of a joint tenancy with right of survivorship was the property of the wife's estate. The bank account was funded with community property and was not subject to any partition agreement or spousal gift. We hold that in light of the absence of a partition agreement or spousal gift, the court of appeals correctly affirmed the trial court's finding that the savings account was not a valid joint account with right of survivorship.

■ This holding is based on a firmly rooted principle of community property law which requires the actual partition of community property before a valid joint tenancy with the right of survivorship can be created. *See Maples v. Nimitz*, 615 S.W.2d 690, 695 (Tex.1981); *Williams v. McKnight*, 402 S.W.2d 505, 507 (Tex.1966); *Hilley v. Hilley*, 161 Tex. 569, 342 S.W.2d 565, 569 (1961). In reliance on section 46(b) of the Probate Code, which allows spouses to create a joint tenancy with right of survivorship in bank accounts, Mr. Allard asserts that the survivorship language on the signature card manifests a clear intention to partition the property, even though there is no partition language on the signature card. This assertion is without merit. We conclude that a partition was not implicit in the agreement because the language of 46(b) was not intended to abrogate the requirement that a valid partition of community property must be executed in order to establish a joint tenancy with right of survivorship. *Jameson v. Bain*, 693 S.W.2d 676, 679 (Tex.App.—San Antonio 1985, no writ).

The judgment of the court of appeals is affirmed.

RAY, J., files a concurring opinion.

SPEARS, J., files a dissenting and concurring opinion in which WALLACE and KILGARLIN, JJ., join.

RAY, Justice, concurring.

I agree with the conclusion of the court of appeals that pension plans are designed primarily for the benefit of the employee and the non-employee spouse and not the able-bodied adult children. However, I concur with the majority in declining to reclassify the retirement benefits as a non-probate asset or to adopt the terminable interest rule. Although equitable and public policy considerations could warrant the application of these doctrines, there is no workable solution based upon community property principles or the Texas Probate Code.

It is submitted that there is an alternative available in order to avoid the unfortunate result that Mr. Allard has experienced. In order to qualify the pension plan benefits as a non-probate asset, the spouses must agree in writing that the surviving spouse will retain all rights to the deceased spouse's community property interest in the pension benefits. The Texas Probate Code classifies certain pension plan provisions as nontestamentary transfers provided that the property rights and pension plans pass to a person designated by the decedent. TEX.PROB.CODE ANN. § 450(a)(1) & (3) (Vernon 1988).

In the instant case, Mrs. Allard, the decedent and non-employee spouse, did nothing to comply with the Texas Probate Code requirements for nontestamentary transfers because she did not make a written agreement to dispose of her community interest in the pension benefits by transferring them to a designated person. Furthermore, the pension plan provided a joint survivor option which the Allards failed to exercise. Thus, there is no basis to conclude that the employee spouse should receive a nontestamentary transfer of the non-employee spouse's community property interest in the retirement plan.

Additionally, adoption of the terminable interest rule would require a recharacterization of the non-employee spouse's com-

munity interest and a divestment of her rights upon her death. Texas community property rights are constitutional in origin and this court and the Texas Legislature must observe constitutional restrictions on the recharacterization of property. *See e.g., Maples v. Nimitz,* 615 S.W.2d 690, 695 (Tex.1981); *Williams v. McKnight,* 402 S.W.2d 505, 507 (Tex.1966); *Arnold v. Leonard,* 114 Tex. 535, 547, 273 S.W. 799, 802 (1925); TEX. CONST. art. XVI, § 15. A recent constitutional amendment provides that "spouses may agree in writing that all or part of their community property becomes the property of their surviving spouse on the death of a spouse". TEX. CONST. ANN. art. XVI, § 15 note (Vernon Supp.1988). However, even if held to be retroactive, this case does not warrant that application because there is no evidence that Mrs. Allard made a written agreement that her community property interest become the property of Mr. Allard upon her death.

In conclusion, I sympathize with Mr. Allard's position, but fundamental community property principles and the Texas Probate Code cannot support the divestment of the community property interest of Mrs. Allard or the qualification of the retirement benefits as a non-probate asset.

PHILLIPS, Chief Justice, concurring on Motion for Rehearing.

I concur in the opinion of the court only because petitioner failed to timely present his argument that state law relating to employee benefits plans has been pre-empted by federal law.

SPEARS, Justice, dissenting and concurring on Motion for Rehearing.

The dissenting and concurring opinion delivered May 4, 1988 is withdrawn and the following is substituted:

Billy Allard was employed by General Dynamics Corporation for thirty-one years. During his lengthy employment with the company, he made regular contributions to a qualified retirement plan and earned the right to receive monthly retirement benefits of $1,008 for the remainder of his life.

Mr. Allard began receiving his retirement benefits in June, 1982, but upon Mrs. Allard's death in 1983, her estate claimed one-half of Mr. Allard's retirement benefits. The majority holds that the beneficiaries of Mrs. Allard's estate—two able-bodied young adults for whom the retirement benefits were never intended—are entitled to one-half of Mr. Allard's retirement pay. I dissent from this holding for two reasons. First, the claim of the will beneficiaries to Mr. Allard's retirement benefits is precluded by federal law. Second, even in the absence of controlling federal law, the holding of the majority contravenes the very purpose of retirement plans.

In his motion for rehearing, Mr. Allard asserts that state law relating to employee benefit plans is federally pre-empted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* (1985). Under the Supremacy Clause of the United States Constitution, federal law that regulates a specific field of activity overrides state law in that area. U.S. Const. art. VI, cl. 2; *Free v. Bland,* 369 U.S. 663, 666, 82 S.Ct. 1089, 1092, 8 L.Ed.2d 180 (1962). Once Congress moves into an area of the law, the power of a state to regulate that subject matter is effectively negated. *Free v. Bland,* 369 U.S. at 666, 670, 82 S.Ct. at 1094. Judicial decisions that apply state law to an area that has been federally pre-empted are subject to nullification on the basis that federal law supersedes state law in that area. *Kalb v. Feuerstein,* 308 U.S. 433, 439, 60 S.Ct. 343, 346, 84 L.Ed. 370 (1940); *see also Ex parte Hovermale,* 636 S.W.2d 828, 834 (Tex.App. —San Antonio 1982, no writ). Consequently, a claim of federal pre-emption is entitled to consideration when it is raised. *See International Longshoreman's Ass'n v. Davis,* 476 U.S. 380, 106 S.Ct. 1904, 1913, 90 L.Ed.2d 389 (1986). A claim of federal pre-emption under ERISA warrants particular consideration because the pre-emption provisions of that statute are designed to establish pension plan regulation as an exclusive federal concern. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). Mr. Allard's

federal pre-emption claim is properly before this court.

In light of the provisions of ERISA and the case law construing that federal statute, it is readily apparent that ERISA preempts state law in this case and prohibits the divestiture of any portion of the retirement benefits to which Mr. Allard is entitled under the General Dynamics pension plan. In 1974, ERISA was enacted to assure employees that they would not be deprived of reasonably anticipated pension benefits. *Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1409 (2nd Cir.1985), *cert. denied*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986). ERISA is remedial legislation and is to be liberally construed in favor of protecting participants in employee benefit plans. *Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir.1984).

As a threshold matter, the retirement plan established by General Dynamics is clearly subject to the provisions of ERISA. ERISA comprehensively regulates "employee pension benefit plans." 29 U.S.C. § 1002(2)(A) (Supp.1988); *Sams v. N.L. Indus., Inc.*, 735 S.W.2d 486, 488 (Tex.App.—Houston [1st Dist.] 1987, no writ). Any plan that provides retirement income is an "employee pension benefit plan" and will be subject to all of ERISA's requirements unless specifically excepted. 29 U.S.C. § 1002(2)(A)(i) (Supp.1988). Further, ERISA applies to pension plans established or maintained by "any employer engaged in commerce or in any industry or activity affecting commerce." *Id.* at § 1003(a)(1). The act itself broadly defines "industry or activity affecting commerce" as "any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce." *Id.* at § 1002(12). The statutory definition of "industry or activity affecting commerce" is intended to be expansive rather than limiting, reflecting Congress' desire to regulate within the full sweep of its constitutional authority. *Winterrowd v. David Freedman & Co., Inc.*, 724 F.2d 823, 825 (9th Cir.1984). Because of the broad scope of its coverage, ERISA clearly applies to General Dynamics as an "indus-try or activity affecting commerce" and to the General Dynamics' retirement plan as an "employee pension benefit plan."

ERISA specifically provides that the benefits under a pension plan may not be assigned or alienated. 29 U.S.C. § 1056(d)(1) (1985). The act recognizes only one exception to this prohibition—benefits may be assigned or alienated when a "qualified domestic relations order" so provides. *Id.* at § 1056(d)(3)(A). The act defines a "qualified domestic relations order" as an order that "relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant" and which "is made pursuant to state domestic relations law." *Id.* at § 1056(d)(3)(B)(ii). The order divesting Mr. Allard of one-half of his retirement benefits in favor of the devisees of Mrs. Allard is not a qualified domestic relations order. It does not accord marital property rights to Mrs. Allard nor provide child support to any dependent of Mr. Allard. The anti-alienation provision of ERISA thus applies to Mr. Allard's retirement benefits. *Id.* at § 1056(d)(1).

It is well established that claims relating to ERISA benefits based on state statutes and common law have been pre-empted and prohibited by ERISA. 29 U.S.C. § 1144(a) (1985); *Pilot Life Ins. Co.*, 107 S.Ct. at 1552–53, 1558; *Holland v. Burlington Indus., Inc.*, 772 F.2d 1140, 1146–48 (4th Cir. 1985); *Winterrowd*, 724 F.2d at 826. ERISA broadly supersedes any state law having a connection with or reference to any employee benefit plan covered by the act. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). A state law that does not expressly concern employee benefit plans will nevertheless be pre-empted if the law applies to the benefits of such plans. *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enter., Inc.*, 793 F.2d 1456, 1465 (5th Cir.1986), *cert. denied*, 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987).

This court has already recognized that federal law may pre-empt Texas community property law and probate law when re-

tirement benefits are the subject of the claim. *Valdez v. Ramirez*, 574 S.W.2d 748, 751 (Tex.1978) (Federal Civil Service Retirement Act held to pre-empt Texas probate and community property law regarding creation of joint survivorship annuity). Specifically, ERISA has been held to pre-empt state law when ERISA benefits are the subject of the claim. *See, e.g., Sams v. N.L. Indus., Inc.*, 735 S.W.2d 486, 489 (Tex. App.—Houston [1st Dist.] 1987, no writ) (employee's common law causes of action for breach of contract, wrongful discharge, and willful refusal to pay sick leave pre-empted by ERISA); *Giles v. TI Employees Pension Plan*, 715 S.W.2d 58, 59 (Tex.App. —Dallas 1986, writ ref'd n.r.e.) (ERISA pre-empted employee's claim under the Deceptive Trade Practices Act that the amount of retirement pay due upon employee's retirement had been misrepresented).

The principles of Texas community property law and probate law, as applied by the majority in this case, clearly relate to ERISA benefits. The state law applied to Mr. Allard's retirement benefits has a direct impact on the relationship between two of the principal ERISA entities—the plan and the plan's beneficiary. *See Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 556 (6th Cir.1987). As a result, ERISA pre-empts state law as it relates to the allocation of Mr. Allard's retirement benefits. Section 1061 of ERISA prohibits the alienation of Mr. Allard's retirement benefits, and, thus, the devisees under Mrs. Allard's will have no claim to any portion of Mr. Allard's retirement benefits.

While it is clear that federal law pre-empts state law as to Mr. Allard's retirement benefits, there is a second, equally important reason that the majority's holding should not govern this cause. The majority sets forth the rule that under Texas law a non-employee spouse may bequeath to third parties his or her community interest in the employee spouse's vested retirement plan. The majority ignores the patent inequity of this rule. Permitting a non-employee spouse to give away one-half of the employee's retirement benefits contravenes the very purpose of retirement plans and violates the legitimate expectations of the elderly who rely on retirement benefits to sustain them in their declining years. The court of appeals and the concurring opinion in this court have acknowledged the unfairness inherent in divesting an employee of hard-earned retirement benefits and diverting those benefits to healthy young adults capable of self support. Simply acknowledging the unfairness of this situation, however, does not restore financial security and support to the elderly who have been stripped of retirement benefits.

This court has in the past directly confronted inequity and rejected outdated doctrines that inflict harsh and unfair results on those least able to bear the loss. *See, e.g., Sanchez v. Schindler*, 651 S.W.2d 249, 252 (Tex.1983) (pecuniary loss rule abolished as limitation on recovery under Texas Wrongful Death Act); *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 758 (Tex.1975) (doctrine of assumption of risk abolished). When faced with obvious inequity, this court has refused to declare itself helpless because of precedent. An equally forceful judicial response is demanded when retired employees are deprived of hard-earned and needed retirement benefits.

Retirement benefits represent additional compensation to an employee who has contributed years of faithful and continuous service to his employer. *Lee v. Lee*, 112 Tex. 392, 247 S.W. 828, 833 (1923). Retirement payments, whether administered through a governmental or private pension plan, replace the employee's salary and frequently represent the primary source of financial support and security for the retired employee and his or her spouse. *Valdez v. Ramirez*, 574 S.W.2d 748, 750 (Tex. 1978). These benefits play a critical role in the financial survival of the elderly after the wage earner no longer works.

Like the personal earnings of spouses, retirement benefits earned during a marriage are community property. *Taggart v. Taggart*, 552 S.W.2d 422, 423 (Tex.1977); *Cearley v. Cearley*, 544 S.W.2d 661, 662, 666 (Tex.1976). Unlike other forms of community property, however, retirement bene-

fits are meant to be shared only by the spouses. *In re Estate of Allen*, 108 Cal. App.3d 614, 619, 166 Cal.Rptr. 653, 656 (Ct.App.1980). Retirement benefits therefore constitute a unique component of the community estate because they are designed *solely* to sustain the retired employee and his or her spouse for the remainder of their lives or for a designated period of time. *Id.* Retirement benefits are not designed to enrich estates or enhance the fortunes of young adults.

At divorce, each spouse's needs for ongoing financial support continue, and thus, retirement benefits are properly divided between the spouses. *Taggart*, 552 S.W.2d at 423. By contrast, when the spouse of a retired employee dies, his or her need for financial support ends. The retired employee, however, continues to depend on retirement benefits for economic survival. *Waite v. Waite*, 6 Cal.3d 461, 474, 492 P.2d 13, 21, 99 Cal.Rptr. 325, 333 (1972). It is contrary to the very purpose of retirement plans to appropriate money from a surviving employee spouse and award it to young, robust, able-bodied adults who are capable of supporting themselves. *Valdez*, 574 S.W.2d at 750. The majority, by mechanically applying community property principles and probate rules, fails to recognize both the purpose and the unique nature of retirement benefits.

The fact that state law may be construed to permit a non-employee spouse to give away one-half of the employee spouse's retirement pay demonstrates the critical need for a rule to ensure that retirement benefits reach those who earned them and need them. If state law were held to be controlling in this area, the interests of the elderly would require either the adoption of a terminable interest rule to govern the non-employee spouse's community interest in retirement benefits upon that spouse's death, or alternatively, the characterization of retirement benefits as nonprobate community property assets. *Waite*, 6 Cal.3d at 470, 474, 492 P.2d at 19–22; 99 Cal.Rptr. at 330–334; *see also* Langbein, *The Nonprobate Revolution and the Future of the Law of Succession*, 97 Harv.L.Rev. 1108, 1111 (1984).

Under a terminable interest rule, a non-employee spouse's interest in retirement benefits would not extend to benefits payable after his or her death. The community interest of the decedent would automatically terminate at his or her own death, and the post-death retirement benefits would become the separate property of the spouse whose employment brought the benefits into existence. Under such a rule, retirement benefits would support only the employee spouse and could not be diverted into the hands of young adults.

The majority has declined to adopt a terminable interest rule, focusing on the problems experienced by California courts in attempting to implement that doctrine. It is important to note, however, that the California rule, unlike the rule proposed here, contained two prongs. First, California's rule provided that the community interest in retirement benefits expired with the death of the employee so that his or her surviving spouse was not assured of any share of continuing benefits. *Benson v. City of Los Angeles*, 60 Cal.2d 355, 384 P.2d 649, 33 Cal.Rptr. 257 (1963) (en banc). Second, the rule held that the community interest in retirement benefits ended upon the death of the non-employee spouse. *Waite v. Waite*, 6 Cal.3d 461, 492 P.2d 13, 99 Cal.Rptr. 325 (1972). California's rule, as the majority notes, was subject to criticism, but the assault centered on the *Benson* prong of the rule that divested a surviving spouse of any contingent benefits upon the death of the employee spouse. *See, e.g.*, Reppy, *Community and Separate Interests in Pensions and Social Security Benefits After Marriage of Brown and ERISA*, 25 U.C.L.A.L.Rev. 417 (1978); Thiede, *The Community Property Interest of the Non–Employee Spouse in Private Retirement Benefits*, 9 U.S.F.L.Rev. 635 (1975). As stated by one California appellate court, that aspect of California's terminable interest rule was patently unfair to the non-employee spouse, failed to recognize the purpose of the benefits involved, and improperly relied on the implied repeal of the California statute that, unlike Texas law, prohibits the unilateral gift of commu-

nity funds. *Chirmside v. Board of Administration,* 143 Cal.App.3d 205, 209, 191 Cal.Rptr. 605, 607 (Ct.App.1983). The California legislature abolished the terminable interest rule in 1986 but, interestingly, did so only with regard to *divorce* cases. Cal. Civ.Code Ann. § 4800.8 (West Supp.1988). Consequently, even if the California experience has relevance to this court's application of Texas community property principles, it in no way negates the viability of a rule that terminates the non-employee spouse's community interest in retirement benefits upon his or her own death.

The majority also declines to characterize retirement benefits as a nonprobate asset. This court, however, has already recognized the nonprobate nature of property passing at death pursuant to the terms of a contributory retirement plan. *Valdez,* 574 S.W.2d at 750. Further, the Texas legislature has evinced a favorable attitude toward nontestamentary transfers of property. The Texas Probate Code expressly recognizes various types of nonprobate assets, including provisions in retirement accounts. Tex.Prob.Code.Ann. § 450 (Vernon Supp. 1988).

There is no reason to permit nontestamentary transfers of property pursuant to the terms of some contributory retirement plans but not pursuant to others. In this case, Mr. Allard earned the right to retirement benefits through his long employment with General Dynamics. Pursuant to section 5.22(a) of the Texas Family Code, he had the sole right to manage and control the retirement plan as long as his actions did not defraud his wife's interest. Tex. Fam.Code Ann. § 5.22(a) (Vernon 1975); *Krueger v. Williams,* 163 Tex. 545, 359 S.W.2d 48, 51 (1962). There are neither pleadings nor evidence to suggest fraud by Mr. Allard. He is thus held to have acted within his authority when he contracted with his employer for the right to receive retirement benefits for the remainder of his life. That contract, not Mrs. Allard's will, is the instrument that properly governs the disposition of Mr. Allard's retirement benefits.

The Texas Probate Code contemplates the designation of a beneficiary by the person who is an actual party to the contract, note, or retirement account in question. Tex.Prob.Code Ann. § 450 (Vernon Supp.1988). Section 450 thus addresses one form of nontestamentary transfer of property; it does not purport to exclude all other forms of nontestamentary transfers. It is incorrect, therefore, to refuse to characterize Mr. Allard's retirement plan as a nonprobate asset on the basis of section 450. Mrs. Allard was not a party to the retirement plan contract between Mr. Allard and General Dynamics. It makes no sense to deprive Mr. Allard of one-half of his retirement benefits because Mrs. Allard did not make a beneficiary designation in an instrument to which she was not a party.

Mr. Allard is entitled to enjoy full retirement benefits for the remainder of his life. Federal law overrides state law in this matter and prohibits the allocation of any portion of Mr. Allard's retirement benefits to Mrs. Allard's devisees. Even if Mr. Allard did not raise his federal pre-emption claim in a timely manner, the very purpose of retirement plans mandates that retirement benefits go to the elderly who earned them and need them. I would therefore reverse the judgment of the court of appeals on this point. I otherwise concur with the majority as to the disposition of the funds on deposit in the joint savings account.

WALLACE and KILGARLIN, JJ., join in this dissenting and concurring opinion.